## JAMES OWEN. *v.* THE STATE.

1. PRIVILEGE OF WITNESS. — In the trial of a husband for an aggravated assault on his wife, she, on her cross-examination by the defence, was asked whether on a former trial she did not testify that she had told the defendant that two men, to whom he forbade her to speak, were in the habit of having sexual intercourse with her. The State objected for

irrelevancy. *Held,* that the objection was properly sustained for the reason assigned; and that the question was also objectionable because it tended to degrade the witness, and, if answered affirmatively, might have subjected her to civil suit, wherefore she should have been apprised by the court of her privilege not to answer. Note the opinion *in extenso* on the subject.

2. MISNOMER — VARIANCE. — Indictment described the assaulted party as Sofia O., and she so gave her Christian name on her direct examination; but on cross-examination she gave it as Sofira, and when reëxamined stated that she was called Sofia as much as Sofira, or more. *Held,* no misnomer or variance, inasmuch as she was known and called as well by the one as the other name. See authorities reviewed in the opinion.

·3. CHASTISEMENT of the wife by the husband is not permitted by the law of this country, however it may formerly have been in England.

APPEAL from the County Court of Delta. Tried below, before the Hon. C. S. NIDEVER, County Judge.

The trial and conviction were for aggravated assault and battery by the appellant upon his wife. Finding him guilty, the jury assessed his punishment at a fine of $500.

The defendant's wife was the only witness to the assault and battery. She testified that they were married in December, 1878, and that one night about May 10, 1879, after her husband had retired to bed, she was sitting on the side of the bed, telling him how much she liked him, to which he replied that might do very well if she would not speak to two certain parties any more, and asked her so to promise him. She answered that she would make no child's bargain. "Defendant then reached up and grabbed me by the throat, jerked me down on the bed, choked me, and scratched my face. I began to cry; he then put his knee on my hair, and reached for his pants, in which he carried a pocket-knife, put out the light, and told me to hush or he would fix me so that I could not make a noise. About that time I heard some one coming. There was a scratched place under my eye, and my throat was so sore and swollen that I could hardly swallow for two days." She remained at the defendant's for some two weeks after the occasion thus spoken of.

A brother of hers testified that he, about the 10th of May,

1879, noticed a scratch upon her face, and in her husband's presence asked her what did it; but she made no reply.

Several close neighbors and daily associates of Mrs. Owen, testifying for the defence, said they heard nothing of the trouble at the time alleged, and noticed no scratch on her face. So far as they could see or judge, the defendant and his wife had been getting along well and happily together.

*Perkins & Perkins*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. The appellant was prosecuted on affidavit and information in the County Court for an aggravated assault and battery, averred to have been committed upon one "Sofia Owen, *alias* Sofia Sandridge;" the affidavit and the information describing the defendant as an " adult male person," and the person alleged to have been assaulted, as a " female." It was developed on the trial that the defendant and the person upon whom the offence is alleged to have been committed were husband and wife, and living together at the date the offence is alleged to have been committed. The trial below resulted in a conviction of the defendant, and the imposition of a fine of $500. A motion for new trial being overruled, this appeal from the judgment is prosecuted.

The various grounds on which reliance is placed for a reversal of the judgment of the County Court are set out in quite a number of bills of exception taken at the trial, and embraced substantially in an assignment of errors. One ground of error complained of and set out in several of the bills of exceptions, and in different aspects, is that, the principal witness being on the stand, and having testified to the assault upon her, and, among other things, that the defendant desired she should promise not to speak to two certain persons named, and that she refused to make the required promise, was asked on cross-examination by defendant's

counsel, after having proved that she was a witness on a former trial, if she had not sworn on that former trial that she had told the defendant that these two persons were in the habit of coming to her and the defendant's house at night and mewing like a cat, and that she would go out to them at that signal, and they would have sexual intercourse with her. To this question the prosecuting attorney objected; the court sustained the objection, and the defendant took his bill of exceptions to the ruling; and the ruling is assigned as error.

The objection urged against the admissibility of the testimony was that it was irrelevant, whilst the appellant's counsel insist that the witness should have been permitted to answer the question as tending to discredit her testimony, and that it was admissible evidence to be considered by the jury in mitigation of the punishment, in case the jury should convict. We see no injury that could have resulted to the defendant by excluding the testimony, if the only object was to prove what the witness had testified to on a former trial. We do not see that it was so connected with the subject of inquiry then before the court as to have been of any appreciable value, and it could only have been important as tending to impeach the witness; and for this purpose, even, it was inadmissible. "In general  *  *  * the rule is that upon cross-examination to try the credit of a witness, only general questions can be put; and he cannot be asked as to any collateral and independent fact, merely with a view to contradict him afterwards by calling another witness." 1 Greenl. on Ev., sect. 455. It is there further said: "But the difficulty lies in determining with precision the materiality and relevancy of the question, when it goes to the character of the witness. There is certainly great force in the argument, that where a man's liberty or his life depends upon the testimony of another, it is of infinite importance that those who are to decide upon that testimony should know, to the greatest extent, how far the witness is to

be trusted." In the present case, however, neither the liberty nor the life of the appellant is at stake, and therefore we are not called on to enlarge the rule as laid down above.

But however this may be in a proper case, we are of opinion the question was altogether improper, and that the witness ought not, and could not legally, have been compelled· to answer it, on the ground that the answer would have had a direct tendency to degrade the character of the witness. Whether a witness should be compelled to give testimony having a tendency to degrade his character, or not, seems not to be well settled by authority. Agreeably to Mr. Greenleaf, " the better opinion seems to be, that where the transaction to which the witness is interrogated forms any part of the issue to be tried, the witness will be obliged to give evidence, however strongly it may reflect on his character." 1 Greenl. on Ev., sect. 454. " But," says the same author, " where the question is not material to the issue, but is collateral and irrelevant, being asked under the license allowed on cross-examination, it stands on another ground. In general, as we have already seen, the rule is, that upon cross-examination to try the credit of a witness, only general questions can be put; and he cannot be asked as to any collateral and independent fact, merely with a view to contradict him afterwards by calling another witness. The danger of such a practice, it is said, is obvious; besides the inconvenience of trying as many collateral issues as one party might choose to introduce, and which the other could not be prepared to meet. Whenever, therefore, the question put to the witness is plainly of this character, it is easy to perceive that it falls under this rule, and should be excluded." Greenl. on Ev., sect. 455. The question here put to the witness comes within this category.

In regard to the privilege of witnesses, in not being compelled to answer, it is said the courts will not prevent the witness from answering if he chooses; they will only advise

him of his right to decline it. "In all cases where the witness, after being advertised of his privilege, chooses to answer, he is bound to answer every thing relating to the transaction. But the privilege is his own, and not that of the party; counsel, therefore, will not be allowed to make the objection. If the witness declines answering, no inference of the truth of the fact is permitted to be drawn from that circumstance. And no answer forced from him after he has claimed protection can afterwards be given in evidence against him." Id., sect. 451. We are of opinion that when the question was asked of the witness, and whilst it was the business of the witness, and not the party, to object, the court, before compelling an answer to the question, should have advised her of her right to decline answering it.

There is still another ground on which the answer to the question was improper. A witness, when by answering a question he may subject himself to a civil action, it seems ought not to be compelled to answer. 1 Greenl. on Ev., sect. 452. To have answered the question put to the witness, as seems to have been anticipated by the interrogator, would have strongly tended to subject her to any of the legal consequences of infidelity to her marriage vows. We are clearly of opinion that, in the circumstances under which the question was asked, the court did not err in sustaining the objection to its being answered.

It is shown by bill of exceptions No. 11, that the court was asked by the defendant to charge the jury, *first*, that in a trial of a party charged with an aggravated assault and battery, the name of the party charged to have been assaulted must be proved as alleged in the indictment or information; *second*, that if the jury believe from the evidence that the party charged to have been assaulted was named Sophira Owen, and not Sofia Owen *alias* Sofia Sandridge, as charged in the information, they ought to acquit the defendant; which the court refused.

Whether these special instructions were applicable or not must be determined by the averments in the information and the testimony adduced on the trial. As we have already seen, the name of the person on whom the assault is charged is " Sofia Owen, *alias* Sofia Sandridge," and it is the same in the affidavit. As to the testimony, it seems that some of the witnesses, in speaking of Mrs. Owen, called her Christian name Sophira, but the true name of the party charged to have been assaulted seems not to have been elicited in the examination of any witness except Mrs. Owen herself. On the question of her name, she says, at the commencement of her testimony : "My name is Sofia Owen. I am the wife of the defendant; was married to him in Delta County, in December, 1878." On her cross-examination she says, " My name is Sophira Owen;" and on reëxamination she says, " I am called Sofia as much, or more, than Sophira. I am not called Sofia Sandridge in Lamar County; they call me simply Sofia." Another State's witness says : " I am the brother of Sofia Owen, the party charged to have been assaulted ; was living with defendant at the time the assault is charged to have been committed." The first witness for the defendant speaks of the " defendant and his wife," but does not mention the names of either. Two other witnesses for the defendant say they were acquainted with " defendant and his wife Sophira ; " the fourth and last witness for the defendant, a son of the defendant, speaks once of " Mrs. Owen," but in his testimony no mention of or allusion to her Christian name is made. The evidence seems to be positive that the name of the assaulted party was Sofia, and not Sophira, Owen ; the only contradiction of any witness whose attention was called to the subject is the statement of the person in question, who says on her cross-examination that her name is " Sophira Owen," followed by the statement on a reëxamination in which her sole testimony is as above set out, " I am called Sofia as much, or more, than Sophira.

I am not called Sofia Sandridge in Lamar County; they call me simply Sofia.'' (Lamar County appears to be the residence of her parents.)

The authorities relied on by the appellant's counsel to support the charge asked, are: 1. *Gorman* v. *The State*, 42 Texas, 221, where it was held that evidence of an assault on *Mary* Gorman will not support a conviction on an indictment for an assault on *Martha* Gorman. 2. *Roberts* v. *The State*, 2 Texas Ct. App. 5, where it was held that Lindsay, Lindsey, and Lindsy are *idem sonans*, but are not so with Lindly. 3. *Burgamy* v. *The State*, 4 Texas Ct. App. 572, where it was held that there was a fatal variance between Abie and Avie. The names were not spelled alike, nor were they *idem sonans*. These cases are not decisive of the question.

The case of *Cotton* v. *The State*, 4 Texas, 260, and the authorities there cited, appear to be more applicable. There the indictment appears to have mentioned three times the name of the person assaulted: *first*, Francis Hubble; *second*, Francis Hubles; and *third*, Francis Hubbles; but there the several names occurred in the indictment, and not in the proof. Yet we make the following quotation from the opinion, as throwing light on the subject under consideration: "As to the remaining objection to the conviction, the description of the person injured, certainty to a common intent, in this respect, is, it is said, all that the law requires; and if the description be sufficiently explicit to inform the prisoner who are his accusers, the indictment may be supported. 1 Chitty's Cr. Law, 211. If a party be known by one name as well as another, he may be described by either (id. 216); as where an indictment for stealing laid the property stolen as belonging to Stephen Harris, and it appeared that the name of the owner was Harrison, but he was sometimes called Harris, it was held to be no variance. Id., note *a*; 1 Overt. 434. If the party here was known by two names, he was well described by

either.'' See the case and the authorities. The court did not err in refusing to give to the jury these charges, nor any others of the several asked by the defendant's counsel.

This remark is peculiarly applicable to the special charge No. 4, consisting of two clauses, as follows: " 1. That the husband should be permitted to exercise the right of moderate chastisement upon his wife in cases of great emergency, and to use restraint in cases of misbehavior, without subjecting himself to vexatious prosecutions resulting in the discredit and shame of all parties concerned. 2. If the jury believe from the evidence that Sophira Owen, the party charged to have been assaulted, was at the time of the assault the wife of defendant, and that the assault made by the defendant was made in the manner and for the purposes set forth in charge No. 1, they ought to acquit the defendant.'' This may have been common law in England sometime in the past, but it is not now the law either there or here. The other positions on the subject of the rulings of the court on the evidence are wholly untenable.

The court, in the general charge, fully instructed the jury as to the law of the case; and the credibility of the witnesses and the amount of punishment under the law was also properly left by the charge to the jury, where they belong. The court below and the jury must be held competent to settle these questions. The record does not support the charge of drunkenness of a juror. We cannot say, from the record before us, either that the testimony was not sufficient, or that the fine imposed was so excessive as to have required the court below to grant a new trial, or to call upon this court to reverse the judgment; and it is affirmed.

*Affirmed.*