## GOVERNMENT OF THE VIRGIN ISLANDS

### v.

### WILLIAM H. HAMILTON, Defendant-Appellee

Crim. No. 39-1971

District Court of the Virgin Islands

Division of St. Croix

December 15, 1971

GEOFFREY BARNARD, Attorney General, Christiansted, St. Croix, V.I., *for the plaintiff*

EDWARD J. OCEAN, Attorney, Christiansted, St. Croix, V.I., *for the defendant*

YOUNG, *Judge*

## OPINION

Appellant appeals the judgments of conviction entered by the Municipal Court on three criminal complaints:

(1) aggravated assault and battery,

(2) brandishing and exhibiting a deadly weapon; and

(3) possession of an unlicensed firearm.

Appellant is a petty officer of the United States Coast Guard in charge of the Hamms Bluff Light Station, St. Croix. He testified that while passing through Frederiksted one evening, on his way to service the light at Sandy Point, he saw an acquaintance of his being assaulted by an unidentified person wielding a machete. He ran to the victim's aid and was himself assaulted. The assailant, seeing appellant draw his .45 caliber service pistol, threw away his machete and fled. Appellant, with the original victim and one other, went into hot pursuit after the assailant and the chase went past the Outset Bar. The other two continued the chase for another one hundred or more feet, but appellant gave up. He was standing in the street with pistol in hand when detective Torres, attracted by the noise and the crowd, entered the scene.

300

At this point we have a sharp divergence between appellant and the detective as to the events which followed. Appellant's testimony, supported by that of two eyewitnesses, is that he was ordered by detective Torres, who was dressed in plain clothes, to turn over the pistol to him. Appellant demanded to know the detective's identity and authority. After being satisfied as to both, he reluctantly surrendered the pistol to the detective, and insisted that the detective go after the assailant or, at least, look for the machete which the assailant threw away. The detective and the patrolman who shortly joined the detective, refused to do this. The picture described by detective Torres is entirely different. He testified that he asked appellant three or more times to surrender his gun, but appellant refused, even though the detective identified himself and showed his badge. The detective then testified: ". . . as I tried to make a move for the weapon, he pulled the hammer back, and at that time one of the ammunition was in the weapon itself." The detective then made a courtroom demonstration showing how appellant "pulled the hammer back". He further testified that after appellant cocked the gun, he pointed it at him and said he was not going to give the gun to him. Then, the detective continued to relate that a Navy Lieutenant on shore patrol duty ". . . in a split second . . . grabbed his [appellant's] hand and he came forward and we grabbed the gun . . . ." This story was not corroborated by any witness, even though there were between twenty to forty witnesses available from among the crowd surrounding the principals.

(1) *Conviction of Aggravated Assault and Battery.*

At the close of the government's case, defendant moved to dismiss the complaint as to aggravated assault and battery, arguing that there can be no crime of aggravated assault and battery without some evidence of a "touching".

301

The motion was denied, without explanation, but presumably on theory that our statute defining assault and battery does not require a "touching" to constitute a "battery".

■ We are here concerned with the interpretation of sections 292 and 298 of Title 14 of the Virgin Islands Code. Section 298 describes aggravated assault and battery as being an assault and battery upon a police officer when it is known or declared to the offender that the person assaulted was an officer discharging his official duty. Section 292 defines an assault and battery as the use of any "unlawful violence" upon the person of another with intent to injure him, whatever the means or the "degree of violence" used. The question is whether the Code Revision Committee in changing the form and phraseology of section 27 of the 1921 Code meant to depart from the common law concept of a battery by not requiring a "touching" as part of the "violence" used. The answer to this question is found by reviewing all of the sections of Chapter 13 of Title 14 as a whole. In section 291, assault is defined as an attempt to commit a battery or making a threatening gesture with the ability to commit a battery. In section 299, the terms "assault and battery" are used disjunctively. In section 293, there are different types of conduct described as constituting "lawful violence". In all of these sections, the use of the term "violence" encompasses some force upon the person of another with intent to injure. Hence, in order that an assault may also become a battery, there must be a "touching" or some physical force and contact within the concept of the common law definition of battery.

■■ In the case *sub judice*, appellant was convicted of having committed aggravated assault and battery upon detective Torres. However, there is no evidence whatever that appellant touched or made any physical contact with the detective. According to the detective's testimony, appellant cocked his weapon, pointed it at him and said he would

not turn over the gun to him. If the trial judge was satisfied that there was an intent to shoot the detective and thereby commit a battery, there would then have been an assault, but beyond that, there was no assault and battery.

(2) *Conviction of Brandishing and Exhibiting a Deadly Weapon.*

■ Appellant was convicted of brandishing a deadly weapon "at approximately thirty patrons of the Outset Bar" and threatening to shoot anyone of them who would venture outside. This was after appellant gave up the chase. After the assailant threw away his machete and ran, appellant was no longer acting in defense of another or in his own self defense. The Court does not condone appellant's overzealousness in a citizen's enforcement of law and order by chasing after the assailant with pistol in hand. However, brandishing and exhibiting the deadly weapon to a group of young men inside the barroom is another story. Detective Torres said that there were about thirty-five or forty people in the area at the time of the incident and the complaint charges appellant with brandishing the weapon at approximately thirty patrons inside the Outset Bar. Yet, with all this abundance of available eyewitnesses, thirty of them qualifying as "complaining witnesses", appellant was convicted solely upon the testimony of the detective that appellant threatened a ". . . group of young men that was inside the bar . . . he was going to shoot any son-of-a-bitch that came out of the place." The prosecution did not sustain its burden of proof beyond reasonable doubt that appellant made such a threat to a group of thirty patrons inside a barroom, especially in the face of testimony of two eyewitnesses to the contrary.

(3) *Conviction of Possession of Unlicensed Firearm.*

■ The section of our Code prohibiting possession of an unlicensed firearm exempts members of the Armed Forces while such member is in the discharge of his official duties,

and while such possession of the firearm is "in accordance with and subject to the conditions and restrictions imposed by the laws and regulations applicable to their conduct", 23 V.I.C. 453. In convicting appellant of possessing an unlicensed firearm, the trial judge had to assume (from a lack of evidence contrary to appellant's testimony) that appellant, at the time of the incident in Frederiksted, was not in a duty status or in transit from one duty station to another in order to discharge his duties; or, at best, the trial judge had to find that appellant carried the side arm contrary to Coast Guard regulations. The only reference to Coast Guard regulations and appellant's authority was appellant's own testimony that he was entrusted with several firearms as commanding officer of the Coast Guard contingent in St. Croix and that he was instructed to wear a side arm whenever off base at night. The prosecution offered no testimony to contradict appellant's statement that, at the time of the incident, he was en route through Frederiksted to service the Sandy Point light. The evidence does not support this conviction. If the conviction of the Coast Guard officer were allowed to stand, it would seriously question the right of any Coast Guardsman to carry a side arm while travelling between duty stations.

At the conclusion of the trial, the judge, on his own motion, dismissed the charge of "disturbance of the peace" and then proceeded to find appellant guilty of the other charges. He sentenced appellant to one year for brandishing and exhibiting a deadly weapon, one year for aggravated assault and battery and ninety days for possessing an unlicensed firearm. Although he permitted the sentences to be served concurrently, they were (save for the ninety days on the unlicensed gun charge), nonetheless the maximum sentences.

The fact that the judge saw fit to impose maximum sentences in this case is startling but not germane to this

review on appeal. This Court has no authority to review the excessiveness of a sentence and I find no merit in appellant's argument that the sentences were unconstitutionally cruel and unusual punishments. The important consideration here is that the sentences were imposed without the benefit of any presentence report. Rule 32 of the Federal Rules of Criminal Procedure does not require a presentence report, but it does state that a presentence report should be made "unless the Court otherwise directs." In this case, the trial judge never made a direction as to a presentence report; nor did he explain why he did not need it before sentencing appellant to a year in jail. He also summarily, and without explanation, dismissed appellant's post conviction motion for a reduction of the sentence. The maximum sentence of each of two of the charges is one year and, for the third charge, six months. Together, they total two and one half years. In the light of the notes of the Advisory Committee on Criminal Rules, explaining the proposed amendment to Rule 32, a presentence report in this case should have been required by the trial judge before sentencing. The trial judge would be well advised that rehabilitation and not retribution is a guiding concern in imposing sentences and the use of a presentence report is extremely desirable. The availability of such a report enables the judge to be more enlightened and to sentence as justice requires.

A presentence report would have shown those pertinent facts which were later presented to the Court in connection with appellant's post conviction motion for a reduction of the sentence, to-wit, appellant is married, has two dependent children, has had no previous disciplinary record of any kind anywhere, he has served in the Coast Guard in Alaska, the Virgin Islands, Vietnam and elsewhere, with a good conduct record for over 16 years, and he is approaching retirement within the next few years with a pension earned

and well deserved. For appellant to serve one year in Richmond Penitentiary, as punishment for the overzealousness in his concept of "law and order", will not serve any useful function to appellant or to society, including those thirty allegedly intimidated patrons of the Outset Bar.

The judgments convicting appellant for brandishing and exhibiting a deadly weapon, aggravated assault and battery and possessing an unlicensed firearm are, for the reasons hereinabove expressed, reversed.