**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**GARY SIMMONDS, Defendant**

Case No. SX-05-CR-215

Superior Court of the Virgin Islands

Division of St. Croix

June 11, 2012

4

■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■

VINCENT F. FRAZIER, ESQ., Attorney General, ELLIOTT M. DAVIS, ESQ., Solicitor General, TIFFANY V. MONROSE, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorneys for the People*.

DEBRA S. WATLINGTON, ESQ., Territorial Chief Public Defender, KELE ONYEJEKWE, ESQ., Territorial Public Defender, Office of the Territorial Public Defender, St. Thomas, USVI, *Attorneys for Defendant*.

DONOHUE, *Presiding Judge*

## MEMORANDUM OPINION

(June 11, 2012)

**THIS MATTER** was remanded by the Appellate Division of the United States District Court for the District of the Virgin Islands for further briefing and findings of fact regarding the constitutionality of Title 14, Section 298(5) of the Virgin Islands Code. This statute elevates any assault and battery committed by an adult male on a female to aggravated assault and battery. On its face, Section 298(5) establishes a classification based on gender that is subject to intermediate scrutiny under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as applied to the Virgin Islands in the Revised Organic Act. For the reasons explained below, the Court finds that the People have failed to show that Section 298(5) serves important government objectives and that the statute is substantially related to the achievement of those objectives.

## I. BACKGROUND

Gary Simmonds assaulted his wife, Tracia Simmonds, during an argument in May 2005. Tracia Simmonds immediately went to the Ann Schrader Command precinct on St. Croix to report the assault. Virgin Islands police arrested Gary Simmonds later that day for "slapping his wife in the face, therefore causing visible injuries." (V.I.P.D. Arrest Rep.

no. 05A08300 ¶ 61, filed May 2, 2005.) At the time, Gary Simmonds was 33 years old, had a medium build, weighed 197 pounds, and stood 5'9" tall. He was sober and unarmed. *Id.* ¶¶ 11, 14-15, 31-35, 56. Gary Simmonds was charged with one count of aggravated assault and battery as an act of domestic violence. (Information, filed May 10, 2005.) He pled not guilty. On September 22, 2005, Gary Simmonds was tried by this Court in a bench trial. (*See generally* Trial Tr. Sept. 22, 2005.) Four witnesses testified on behalf of the People. Gary Simmonds did not put on a case.

Based on the testimony and evidence presented at trial, the Court found that Tracia Simmonds and Gary Simmonds were married. *Id.* at 131:13-14, At the time of the assault, Gary Simmonds was an adult male and Tracia Simmonds was an adult female. *Id.* at 131:14-17. People's Exhibits 1 and 2 were photographs that showed a red, swollen area around the eye region on the left side of Tracia Simmonds's face. *Id.* at 131:8-10. Based on Tracia Simmonds's dark-skinned complexion, the blow to her face could not have been weak in order to cause the degree of redness depicted. *Id.* at 131:11-12. Despite her testimony, Tracia Simmonds was not the initial aggressor.[1] *Id.* at 130:18-19. The police officers' testimonies that Gary Simmonds assaulted Tracia Simmonds without provocation were more credible. *Id.* at 131:3-6. The People proved beyond a reasonable doubt that on May 2, 2005, Gary Simmonds used unlawful

---

[1] In her statement to police, Tracia Simmonds reported:

My husband started beating me in the face. He broke off a towel rack in the bathroom. We exchange [sic] words. I went to the bedroom. We had a physical altercation. He continue [sic] beating me. I called 911 and then I manage [sic] to get away and I went to the police station.

(Trial Tr. 63:5-9 Sept. 22, 2005.) In court, however, Simmonds denied that her husband beat her. *Id.* at 66:3-4. She explained: "My husband slapped me. We exchange [sic] blows. I hit him. He hit me, you know, back and forth." *Id.* at 66:8-9. When asked why she never told the police or the prosecutor that she was the initial aggressor, Tracia Simmonds attributed it to nervousness. *Id.* at 56:17-22. She noted on cross-examination that neither the police nor anyone at the Attorney General's Office inquired as to who hit first. *Id.* at 67:8-9 & 71:10-16. In June 2005, Simmonds sent a notarized letter to the Attorney General's Office, noting that her husband's actions were inexcusable but requesting that the case be dismissed. *Id.* at 59:1-24. The People called Minerva Saldana, a paralegal in the Domestic Violence Unit at the Virgin Islands Department of Justice, as a rebuttal witness to explain that the first time Simmonds said she was the initial aggressor was after learning "what might happen." *Id.* at 79:1-3. Tracia Simmonds "didn't want her husband to lose his job." *Id.* at 81:13.

8

violence on Tracia Simmonds with the intent to injure her and therefore was guilty of aggravated assault and battery. *Id.* at 132:9-13.

Gary Simmonds was sentenced to six months incarceration, suspended, and one year of probation. (Judgment of Dec. 6, 2005.) The Court also ordered Simmonds to complete an anger management program for batterers because he was in contact with Tracia Simmonds after the trial. (Sent. Tr. 11:22-24, Nov. 2, 2005. *Accord* Order, Nov. 17, 2005, *Simmonds v. Simmonds*, SX-05-DV-373 (dismissing with prejudice Gary Simmonds's domestic violence action brought against Tracia Simmonds).) In August 2006, the Office of Probation petitioned to revoke Simmonds's probation because Tracia Simmonds had obtained a permanent restraining order against him in a civil domestic violence action. (*See* Pet. for Prob. Revoc., filed Aug. 29, 2006 (attaching permanent restraining order entered Aug. 26, 2006 in *Simmonds v. Simmonds*, SX-06-DV-269).) The Court held a hearing and found cause for revoking Simmonds's probation. The Court sentenced Simmonds to time served and extended his probation for six months. (Judgment of Dec. 4, 2006.) Gary Simmonds was discharged from probation in April 2007. (Order, Sept. 17, 2010.)

Simmonds appealed his conviction to the Appellate Division, claiming that the aggravated assault and battery statute denied him equal protection based on his gender.[2] *See generally Simmonds v. People*, 55 V.I. 1069 (D.V.I. App. Div. 2011). The Appellate Division noted Simmonds's constitutional challenge but remanded that question to this Court "for further briefing and corresponding fact-finding," because the People had failed on appeal "to assert any facts or arguments whatsoever to demonstrate that § 298(5) was spawned by a legitimate or important government objective and that a substantial relationship exists between the challenged statute and achieving the [T]erritory's legitimate goal." *Id.* at 1074. On remand, the Court ordered briefing on the constitutionality of the statute and scheduled a hearing. Both parties filed briefs in support of

---

[2] The Supreme Court of the Virgin Islands officially assumed appellate jurisdiction over the Superior Court of the Virgin Islands on January 29, 2007. *Hypolite v. People*, 51 V.I. 97 (2009). Appeals filed prior to that date remain with the Appellate Division of the District Court of the Virgin Islands. 48 U.S.C. § 1613a(d) (2009); *Maynard v. Virgin Islands*, 392 Fed. App'x 105, 111 n.8 (3d Cir. 2010) (unpub.); *Joseph v. People*, 50 V.I. 873 (D.V.I. App. Div. 2008).

their positions. However, neither party appeared when this matter came on for hearing.

## II. EQUAL PROTECTION

■ The Fourteenth Amendment to the United States Constitution prohibits States, and by congressional extension Territories, from denying equal protection of the law to any person within their respective jurisdictions. U.S. CONST. amend. XIV, § 1; Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561 (2009), *reprinted in* V.I. CODE ANN., Hist. Docs, Org. Acts, and U.S. CONST., at 209 (1995) (preceding V.I. CODE ANN. tit. 1).[3] Claims alleging denial of equal protection in the Virgin Islands mirror

---

[3] Congress first guaranteed equal protection in the Virgin Islands through the Organic Act of 1936. *See* Organic Act of 1936, § 34, 49 Stat. 1807, 1815 (1936) (partially repealed by numerous legislative acts). *Accord Alton v. Alton*, 207 F.2d 667, 670 n.8, 2 V.I. 600 (3d Cir. 1953) ("While the Organic Act of the Virgin Islands . . . did not extend the Constitution to the Islands, it does contain a Bill of Rights which includes a due process and equal protection clause.") (internal citations omitted). But in subsequent revisions, Congress extended the Equal Protection Clause directly to the Virgin Islands, declaring that it "shall have the same force and effect there as in the United States or in any State of the United States . . . ." Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561 (2009), *reprinted in* V.I. CODE ANN., Hist. Docs, Org. Acts, and U.S. CONST., at 209 (1995) (preceding V.I. Code Ann. tit. 1). The Revised Organic Act also retained the earlier equal protection clause provided in the Organic Act. *Compare id.* ("No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws.") *with* Organic Act of 1936, § 34, 49 Stat. 1807, 1815 (1936) (repealed 1982) ("No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws."). *Accord In re Brown*, 439 F.2d 47, 51 n.9, 8 V.I. 313 (3d Cir. 1971). Thus, technically, Congress guaranteed equal protection to the Virgin Islands twice: expressly and by extension. Simmonds asserts that this distinction makes a difference. (*See generally* Def. Br. 16-18, filed Sept. 30, 2011.) He argues that "[i]f Article 3 is read to grant the same rights as the 14th Amendment, then the ROA will be surplusage." *Id.* at 17. "[T]here is a presumption against interpreting statutes in a manner to make a whole section of a statute superfluous." *Id.* (citations omitted). Because the express guarantee of equal protection in the Revised Organic Act "operates to more strictly forbid deprivation of equal protection in a small territory such as ours," Simmonds argues, "this Court . . . should apply a strict scrutiny standard of review . . . ." *Id.* The Revised Organic Act could be read both to prohibit the Virgin Islands, by extension of the Fourteenth Amendment, from denying equal protection of existing laws, and also to prohibit, through the Section 3, the enactment of any law that would deny equal protection. In "interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous." *Birdman v. Office of the Governor*, 677 F.3d 167, 176, 56 V.I. 973 (3d Cir. 2012) (quoting *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001)). But judicial application of the canons and principles of statutory interpretation is not perfunctory.

claims brought against States under the Fourteenth Amendment. *See In re Brown*, 439 F.2d 47, 51, 8 V.I. 313 (3d Cir. 1971). "The function of the Equal Protection Clause . . . is simply to measure the validity of classifications created by state [and territorial] laws." *San Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 59-60, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) (Stewart, J., concurring). " 'Equal protection' . . . emphasizes disparity in treatment by a [government] between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974). "Unlike other provisions of the Constitution, the Equal Protection Clause confers no substantive rights and creates no substantive liberties." *Rodriguez*, 411 U.S. at 59-60. The "Clause is offended only by laws that are invidiously discriminatory — only by classifications that are wholly arbitrary or capricious." *Id.*

■ Statutes providing for different treatment on the basis of gender establish a classification subject to intermediate scrutiny under the Equal Protection Clause. *Orr v. Orr*, 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979); *Hynson v. City of Chester, Legal Dept.*, 864 F.2d 1026, 1029 (3d Cir. 1988). The fact that a statute "discriminates against males rather than against females does not exempt it from scrutiny or reduce the standard of review." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982) (citing *Caban v. Mohammed*, 441 U.S. 380, 394, 99 S. Ct. 1760, 60 L. Ed. 2d 297 (1979); *Orr*, 440 U.S. at 279). "[T]he party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an 'exceedingly persuasive justification' for the classification." *Id.* at 724 (citing *Kirchberg v. Feenstra*, 450 U.S. 455, 461, 101 S. Ct. 1195, 67 L. Ed. 2d 428 (1981); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979)). "The burden of justification

---

"The canon requiring a court to give effect to each word '*if possible*' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute.' " *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122 S. Ct. 528, 151 L. Ed. 2d 474 (quoting Karl Llewellyn, *The Common Law Tradition*, 525 (1960)). "[N]umerous examples exist of Congress conferring, through a territory's organic act or constitution, rights that are greater than those afforded by the United States Constitution." *Murrell v. People*, 54 V.I. 338, 351 n.6 (2010). Here, however, the Appellate Division did not task this Court on remand with determining whether Congress intended to confer greater equal protection rights in the Virgin Islands through the Territory's organic acts. Thus, Simmonds arguments to that end are not before this Court for consideration.

is demanding and it rests entirely on the [Government]." *United States v. Virginia*, 518 U.S. 515, 533, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996) (citation omitted). The Government must show that the gender classification at issue "serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.' " *Id.* (quoting *Miss. Univ. for Women*, 458 U.S. at 724). "If the [government]'s objective is legitimate and important, [the Court] next determine[s] whether the requisite direct, substantial relationship between objective and means is present." *Miss. Univ. for Women*, 458 U.S. at 725. "The purpose of requiring that close relationship is to assure that the validity of a classification is determined through reasoned analysis rather than through the mechanical application of traditional, often inaccurate, assumptions about the proper roles of men and women." *Id.* at 725-26.

■ Additionally, where, as here, construction and interpretation of a penal statute is at issue, courts must construe such statutes strictly. *United States v. Giles*, 300 U.S. 41, 57 S. Ct. 340, 81 L. Ed. 493, *reh. denied*, 300 U.S. 687, 57 S. Ct. 505, 81 L. Ed. 888 (1973); *United States v. Resnick*, 299 U.S. 207, 57 S. Ct. 126, 81 L. Ed. 127 (1937). "The rule has long been settled in American jurisdictions that all such statutes must be construed strictly against the state and favorably to the liberty of the citizen. This rule is founded on the tenderness of the law for the rights of individuals and upon the plain principle that the power to decide what is a crime and the power to punish are vested in the legislative, not in the judicial department." *Braffith v. People of the V.I.*, 26 F.2d 646, 648-49, 1 V.I. 582 (3d Cir. 1928) (internal quotations and citations omitted).

## III. AGGRAVATED ASSAULT AND BATTERY STATUTE

Simmonds challenges the constitutionality of the Virgin Islands aggravated assault and battery statute as denying equal protection of the law to males based on their gender. This statute elevates simple assault and battery to aggravated assault and battery if the act is committed by an adult male on a female. Males face harsher punishment than females for the same action. Because on its face the statute contains a classification that distinguishes on the basis of gender, it is subject to scrutiny under the Equal Protection Clause.

■■ Under the Virgin Islands Code, a person commits assault if he "(1) attempts to commit a battery; or (2) makes a threatening gesture

12

showing in itself an immediate intention coupled with an ability to commit a battery." V.I. CODE ANN. tit. 14, § 291 (1996). Battery requires "a 'touching' or some physical force and contact within the concept of the common law definition of battery." *Government v. Hamilton*, 334 F. Supp. 1382, 1384, 8 V.I. 298 (D.V.I. App. Div. 1971), *appeal dismissed*, 475 F.2d 529, 9 V.I. 574 (3d Cir. 1973). Assault and battery involves the use of "unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used . . . ." V.I. CODE ANN. tit. 14, § 292. An assault or battery "unattended with circumstances of aggravation" is simple assault and battery. *Id.* § 299.

Assault and battery becomes aggravated if committed:

(1) upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty;

(2) in a court of justice or in any place of religious worship, or in any place where persons are assembled for the purpose of innocent amusement;

(3) after having gone into the house of a private family and there commits the assault and battery;

(4) [by] a person of robust health, upon one who is aged or decrepit;

(5) [by] an adult male, upon the person of a female or child, or being an adult female, upon the person of a child;

(6) by an instrument or means which inflicts disgrace upon the person assaulted, such as a whip, cowhide or cane;

(7) while being in disguise;

(8) on a teacher or school employee on school grounds; or

(9) on a caseworker, investigator, or other health and human services employee in the performance of an official duty.

*Id.* § 298(1)-(7); Act No. 7267, 29th Leg., Reg. Sess. § 6 (V.I. 2011) (to be codified at V.I. CODE ANN. tit. 14, § 298(8)-(9)), *available at* VI LEGIS 7267 (Westlaw).

"Section 298 is predicated on an initial finding that the defendant did in fact commit a simple assault and battery, but it is coupled with an element of aggravation that also is unlawful . . . ." *Government v. Frett*, 14 V.I. 315, 320 (Terr. Ct. 1978). "The term 'aggravated assault and

battery' is employed to describe an assault which has, in addition to the mere intent to commit it, another object which is also unlawful . . . ." *Government v. Hodge*, 7 V.I. 73, 79 (D.V.I. App. Div. 1968). "[T]he question of intent is one of fact, to be determined or inferred from the surrounding facts and circumstances of the crime." *Edwards v. Government*, 47 V.I. 605, 614 (D.V.I. App. Div. 2005) (citing *Drew v. Drew*, 971 F. Supp. 948, 951, 37 V.I. 61 (D.V.I. App. Div. 1997)).

Although Virgin Islands courts have examined the language and purpose of the aggravated assault and battery statute, to date no court has had occasion to consider its origin. Therefore, in order to place Simmonds's constitutional challenge in the proper context, the Court must first consider the language, purpose, and origin of the challenged statute. *See Skilling v. United States*, 130 S. Ct. 2896, 2926, 177 L. Ed. 2d 619 (2010).

## A. Initial Codification of Aggravated Assault and Battery

"The first codification of the laws of the Virgin Islands subsequent to the transfer of this territory from the Kingdom of Denmark to the United States of America was the 1921 code . . . ." *Paiewonsky v. Paiewonsky*, 315 F. Supp. 752, 754, 8 V.I. 52 (D.V.I. 1970). Separate codes were enacted for the Municipality of St. Thomas and St. John and for the Municipality of St. Croix. *See generally* ST. THOMAS/ST. JOHN MUN. CODE (1921); ST. CROIX MUN. CODE (1921) (hereinafter "1921 CODES"), *microformed on* Codes, Ordinance, Laws, and Resolutions of the Virgin Islands: 1917-1954, call no. LL-0301 (Library of Congress), *repealed by* V.I. CODE ANN. tit. 1, § 5 (1957 ed.). "The codes as adopted in each of the two municipalities contained some variations and differences, but they were substantially similar." *Paiewonsky*, 315 F. Supp. at 754. Assault and battery, including aggravated assault and battery, were among the offenses initially codified in 1921.[4] *See* 1921 CODES tit. IV, ch. 5, §§ 27-33.

---

[4] Pertinent portions of Chapter Five of Title IV of the 1921 CODES read as follows:

Section 27.—The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing in itself an immediate intention, coupled with an ability to commit a battery, is an assault . . . .

Section 32.—An assault and battery becomes aggravated when committed under any of the following circumstances:

14

According to Title 5, Section 32, of the 1921 CODES, "[a]n assault and battery becomes aggravated . . . [w]hen committed by an adult male upon the person of a female . . . ." *Id.* § 32.

In 1957, the Legislature repealed the 1921 CODES, adopting instead a comprehensive code governing the entire Territory. V.I. CODE ANN. tit. 1, § 5 (1996). "All available laws, including the 1921 CODES . . . were classified according to subject matter, carefully edited, and arranged into 34 titles. Many changes in style and substance were made." *Id.* at xi (reprinting Preface to First Edition). The 1957 Code retained the earlier assault and battery statutes, including the aggravated assault and battery statute.[5] *See generally* V.I. CODE ANN. tit. 14. §§ 291-92, 298-99 (revision

---

(1) When committed upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty;

(2) When committed in a court of justice, or in any place of religious worship, or in any place where persons are assembled for the purpose of innocent amusement;

(3) When the person committing the offense goes into the house of a private family and is there guilty of an assault and battery;

(4) When committed by a person of robust health upon one who is aged or decrepit;

(5) When committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child;

(6) When the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a whip, cowhide or cane;

(7) When a serious bodily injury is inflicted upon the person assaulted;

(8) When committed with dealy [sic] weapons under circumstances not amounting to an intent to kill or maim;

(9) When committed with premeditated design, and by the use of means calculated to inflict great bodily injury;

(10) When committed by any person or persons in disguise.

Section 33.—The punishment for an aggravated assault, or aggravated assault and battery, shall be by fine not exceeding five hundred dollars, or imprisonment in jail not exceeding one year, or by both such fine and imprisonment.

1921 CODES, tit. IV, ch. 5, §§ 27, 32-33.

[5] Pertinent portions from the first edition of the Virgin Islands Code read as follows:

§ 291. Assault defined

Whoever—

(1) attempts to commit a battery; or

(2) makes a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery—

commits an assault.

§ 292. Assault and battery defined

notes) (1964 ed.). Section 298, the current aggravated assault and battery statute "derive[s] from . . . section 32 of the 1921 CODES . . . . Changes were made in form and phraseology [only]." *Id.* § 298 (revision note). As Section 298 only differs from Section 32 in format and not substance, the text of the aggravated assault and battery statute sheds no light on the constitutional question presented here. The origin of this statute is illuminating, however. As with many of the laws that comprised the 1921 CODES, the Virgin Islands borrowed the aggravated assault and battery statute from another jurisdiction. The origin of the aggravated assault and battery statute is critical to the Court's analysis of Simmonds's constitutional challenge since "the language of a Virgin Islands statute

---

Whoever uses any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, commits an assault and battery . . . .

§ 298. Aggravated assault and battery

Whoever commits an assault and battery—

(1) upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty;

(2) in a court of justice or in any place of religious worship, or in any place where persons are assembled for the purpose of innocent amusement;

(3) after having gone into the house of a private family and there commits the assault and battery;

(4) being a person of robust health, upon one who is aged or decrepit;

(5) being an adult male, upon the person of a female or child, or being an adult female, upon the person of a child;

(6) by an instrument or means which inflicts disgrace upon the person assaulted, such as a whip, cowhide or cane; or

(7) which inflicts serious bodily injury upon the person assaulted;

(8) with deadly weapons under circumstances not amounting to an intent to kill or maim;

(9) with premeditated design and by the use of means calculated to inflict great bodily harm; or

(10) while being in disguise—

shall be fined not more than $500 or imprisoned not more than 1 year, or both.

§ 299. Simple assault and battery

Whoever commits—

(1) a simple assault; or

(2) an assault or battery unattended with circumstances of aggravation—

shall be fined not more than $50 or imprisoned not more than 30 days, or both.

V.I. CODE ANN. tit. 14, §§ 291-92, 298-99 (1957 ed.).

which has been taken from the statutes of another jurisdiction is to be construed to mean what the highest court of the jurisdiction from which it was taken had, prior to its enactment in the Virgin Islands, construed it to mean." *Berkeley v. W. Indies Enter., Inc.*, 480 F.2d 1088, 1092, 10 V.I. 619 (3d Cir. 1973).

## B. Origin of the Aggravated Assault and Battery Statute

The 1921 CODES are considered to have been "taken largely from the Codes of the Territory of Alaska." *Burch v. Burch*, 195 F.2d 799, 805, 2 V.I. 559 (3d Cir. 1952). *Accord Mun. of St. Croix v. Stakemann*, 1 V.I. 60, 64 (D.V.I. 1924) ("It is a matter of local history that the greater part of the Code of Law of the two Municipalities . . . has been adopted from 'The Compiled Laws of the Territory of Alaska, of 1913.' "). But the 1921 CODES did not merely duplicate the Alaskan codes. Some laws were modified before being incorporated in the 1921 CODES, presumably to adapt those laws to this jurisdiction.[6] In one instance, Danish law was retained and merged with Alaskan law.[7] Even where a Virgin Islands statute mirrored Alaskan law, Alaska, itself, may have borrowed its statute from another jurisdiction.[8] Thus, while the 1921 CODES were borrowed largely from the Territory of Alaska, Alaska is not the only jurisdiction the Virgin Islands borrowed from. Statutes were taken from other

---

[6] *See, e.g., Giurdanella v. Giurdanella*, 358 F.2d 321, 325, 5 V.I. 475 (3d Cir. 1966) ("[I]n enacting the 1921 codes the Colonial Councils omitted from their draft several portions of section 1105 of the Alaska Compiled Laws which they evidently did not regard as appropriate for the Virgin Islands."); *People v. Demming*, 1 V.I. 116, 125 (D.V.I. 1927) ("While our local Code was taken in large part from the Alaskan Code, the section dealing with this point was not adopted verbatim.").

[7] *See Burch*, 195 F.2d at 805-06 ("Under the Danish law . . . divorce upon grounds analogous to incompatibility of temperament had been recognized . . . . Since these were grounds then unknown to the Alaska law but recognized under the Danish law then in force in the Islands it would seem most likely that they were added to preserve that existing law.").

[8] *See, e.g., Mun. of St. Croix v. Stakemann*, 1 V.I. 60, 64-65 (D.V.I. 1924) ("This Alaskan Code is frequently assumed to be of Oregonian origin . . . . But some parts . . . were subsequently adopted by Congress from other States . . . . [T]he statutes concerning Eminent Domain from which ours are adopted were borrowed from the Civil Code of Procedure of Montana. Sundry provisions of the laws concerning Interest and Usury, copied in our local Codes from the Alaskan laws had been previously adopted from . . . the Revised Statutes of Texas of 1895.").

jurisdictions such as Montana, Iowa, New York, and as further discussed below, Puerto Rico.[9]

This diverse confluence on the 1921 CODES is relevant here in large part because the Virgin Islands aggravated assault and battery cannot be traced back to the Territory of Alaska. The term "aggravated" does not appear within the 1913 Alaskan Penal Code. None of Alaska's assault and battery statutes resemble the statutes enacted in the 1921 CODES.[10] Thus, the Territory of Alaska was not the source of the Virgin Islands aggravated assault and battery statute. The State of New York and the State of California also did not codify assault and battery in language resembling the 1921 CODES.[11] But nearly identical language does appear in the penal codes of the State of Texas and the Territories of Arizona and Puerto Rico. The Court will consider each jurisdiction in order to determine the origin of our aggravated assault and battery statute.

### i. Assault and Battery Laws in Texas, Arizona, and Puerto Rico

In 1856, the State of Texas adopted a comprehensive penal code as part of an overall revision of the State's criminal laws. *See generally* TEX.

---

[9] *See, e.g., Foreign Commerce v. Tonn*, 789 F.2d 221, 228 (3d Cir. 1986) (Hunter, J., dissenting) ("I am prepared to grant the Majority's assumption that the Virgin Islands statute is patterned after the Iowa statute. Although I have not been able to locate legislative history stating that § 952 has its roots in the Iowa statute, this seems a reasonable conclusion in light of the similarity in language and Iowa's apparent status as the only jurisdiction with such a statute in 1921."); *People v. Charles*, 1 V.I. 201, 211 (D.V.I. 1929) ("We are entitled to go back to the common law in such matters. It was done in New York, a code state, from which a large part of this code (1921) was actually, though indirectly, taken.").

[10] Territorial Alaska's penal code defined assault and battery as follows:

> That whoever, not being armed with a dangerous weapon, unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another, shall be fined not more than five hundred dollars or imprisoned in the county jail not more than six months or both.

COMPILED L. OF TERR. OF ALASKA, tit. XIV, ch. 2, § 1905 (1913). Annotations to this section refer the reader to an earlier compilation known as Carter's Code. *See id.* Carter's Code assigned Ohio as the source of Alaska's assault and battery statute. *See* L. OF ALASKA, part 1, ch. II § 25 (1907) (Thomas H. Carter, ed.). *Accord* 3 ANN. REV. STAT. OF OHIO, tit. 1, ch. 3, § 6823 (1906) (Clement Bates, ed.). The Ohio and Alaska assault and battery statutes are nearly identical. Neither, however, tracks the statutes enacted in the 1921 CODES.

[11] *See, e.g.*, N.Y. PENAL L. art. 20, § 244 (1911 ed.); CAL. PENAL CODE tit. VIII, ch. IX, § 240-43 (1872 ed.), *reprinted in* 4 James M. Kerr, *Codes of Cal.* 286-89 (2d ed. 1921).

PENAL CODE (1856 ed.) (hereinafter "1856 Penal Code"). Simple and aggravated assault were codified as separate offenses.[12] *See generally id.* tit. XVII, ch. 1-2, art. 475-89. Factors elevating simple assault to aggravated assault were also enumerated by statute.[13] One such factor was an assault and battery "committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child." TEX. PENAL CODE ANN. tit. 15, art. 1022(5) (1911 ed.). Assault and battery remained substantially unchanged through three subsequent revisions to Texas's penal code prior to 1921.[14] *See* TEX. PENAL CODE tit.

---

[12] *See State v. Pierce*, 26 Tex. 114, 116 (1861) ("It seems to have been the intention of the code to treat simple assaults and aggravated assaults as distinct offenses . . . . An indictment for an aggravated assault should charge the offense as such, setting forth also the circumstances constituting the aggravation.").

[13] *See State v. Lutterloh*, 22 Tex. 210, 213 (1858) ("Our laws, previous to the adoption of the code, recognized the grades of common and of aggravated assault, but never before attempted to draw, so precisely, the distinction between them. The latter always included the former.").

[14] The 1911 Texas Penal Code assault and battery chapter read, in pertinent part:

Article 1008. [587] "Assault and battery" defined.—The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing, in itself or by words accompanying it, an immediate intention, coupled with an ability to commit a battery, is an assault.

Art. 1009. [588] Intent presumed, and "injury" defined.—When an injury is caused by violence to the person, the intent to injure is presumed; and it rests with the person inflicting the injury to show the accident or innocent intention. The injury intended may be either bodily pain, constraint, a sense of shame or other disagreeable emotion of the mind . . . .

Art. 1017. [596] "Battery," how used.—The word "battery" is used in this Code in the same sense as "assault and battery."

Art. 1018. [597] Degrees of assault.—An assault is either a simple assault, an aggravated assault, or an assault with intent to commit some other offense . . . .

Art. 1022. [601] Definition.—An assault and battery becomes aggravated when committed under any of the following circumstances:

1. When committed upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty.

2. When committed in a court of justice, or in any place of religious worship, or in any place where persons are assembled for the purpose of innocent amusement.

3. When the person committing the offense goes into the house of a private family and is there guilty of an assault and battery.

4. When committed by a person of robust health or strength upon one who is aged or decrepit.

XV, ch. 1-2 (1879 ed.); TEX. PENAL CODE tit. XV, ch. 1-2 (1895 ed.); TEX. PENAL CODE tit. XV, ch. 1-2 (1911 ed.).[15]

In 1901, the Territory of Arizona borrowed portions of Texas's assault and battery statutes, including Texas's aggravated assault and battery statute.[16] *See State v. Romero*, 61 Ariz. 249, 148 P.2d 357 (1944).

---

5. When committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child.

6. When the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a whip or cowhide.

7. When a serious bodily injury is inflicted upon the person assaulted.

8. When committed with deadly weapons under circumstances not amounting to an intent to murder or maim.

9. When committed with premeditated design, and by the use of means calculated to inflict great bodily injury.

10. When committed by any person or persons in disguise.

Art. 1023. [602] Aggravation may be of different degrees.—The circumstances of aggravation, mentioned in the preceding article, are of different degrees, and the jury are to consider these circumstances in forming their verdict and assessing the punishment.

TEX. PENAL CODE ANN. tit. 15, art. 1008-09, 1017-18, 1022-23 (1911 ed.).

[15] Texas amended its assault and battery statutes in 1858, two years after adoption. *See generally* "An Act supplementary to and amendatory of an act entitled an act to adopt and establish a Penal Code for the State of Texas, approved 28th August, 1856," adopted Feb. 12, 1858, *reprinted in* 4 H.P.N. Gammel, *The Laws of Texas 1822-1897*, 1028-1061 (1898). The only difference between the 1856 statute and 1858 revision was scrivener's errors. In 1871, Texas added a tenth factor to its aggravated assault and battery statute for assaults "committed by any person or persons in disguise." *See* "An Act to Amend the Penal Code for the State of Texas," adopted Nov. 6, 1871, *reprinted in* 7 H.P.N. Gammel, *The Laws of Texas 1822-1897*, 21-23 (1898). The State subsequently deleted this factor in 1925. *See* TEX. PENAL CODE ANN., tit. XV, art. 1147 (1925 ed.).

[16] Congress created the Territory of Arizona in 1863 from land within the Territory of New Mexico. *See* Act of Feb. 24, 1863, § 1, 12 Stat. 664, 664-65. Because the new territory was formerly part of New Mexico, Congress continued New Mexico's territorial laws until a local legislature was established. *Id.* § 2. One year after the Territory was formed, the legislature discarded New Mexican law, replacing it with the Howell Code. *See, e.g., John W. Masury & Son v. Bisbee Lumber Co.*, 49 Ariz. 443, 68 P.2d 679, 686 (1937) ("One of the first businesses of the legislative authorities of the new territory was to adopt a code of laws, commonly referred to as the Howell Code of 1864."). The Howell Code "was a code long in effect with few modifications, and influential throughout all of the history of Arizona." John S. Goff, *William T. Howell and the Howell Code of Arizona*, 11 AM. J. LEGAL HIST. 221, 221 (1967). Under the Howell Code, "[a]ssault and battery is the unlawful beating of another." HOWELL CODE ch. X, § 51 (1864), *reprinted in The Compiled Laws of the Territory of Arizona Including the Howell Code and the Session Laws from 1864 to 1871-77* (Coles Bashford, ed.) (1871). Assault and battery under the Howell Code and remained substantially unchanged until Arizona revised its statutes in 1901.

According to the 1901 Arizona Penal Code, an assault and battery became aggravated "[w]hen committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child."[17] Terr. Ariz. Rev. Stat., Penal Code, part I, tit. VIII. ch. IX, §§ 207(3) (1901). The Territory of Puerto Rico[18] also borrowed its assault and battery statutes,

---

[17] Assault and battery under the 1901 Revised Statutes of the Arizona Territory read, in pertinent part:

> 207. An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another . . . .
> 209. A battery is any willful and unlawful use of force or violence upon the person of another . . . .
> 215. An aggravated assault is an assault under any of the following circumstances:
> > 1. When the person committing the offense goes into the house of a private family and is there guilty of an assault or battery.
> > 2. When committed by a person of robust health or strength upon one who is decrepit.
> > 3. When committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child.
> > 4. When the instrument or means used is such as to inflict disgrace upon the person assaulted, as an assault or battery with a whip or cowhide.
> > 5. When a serious bodily injury is inflicted upon the person assaulted.
> > 6. When committed with a premeditated design and by the use of means calculated to inflict great bodily injury.
> > 7. When committed by any person or persons in disguise.
> 216. An aggravated battery is a battery committed under any of the circumstances mentioned in the preceding Section.
> 217. An aggravated assault or an aggravated battery is punishable by a fine of not less than one hundred dollars nor exceeding two thousand dollars, or by imprisonment in the territorial prison not less than one nor exceeding five years, or both.

TERR. ARIZ. REV. STAT., Penal Code, part I, tit. VIII, ch. IX, §§ 207, 209, 215-17 (1901).

[18] The United States acquired the territory of Puerto Rico from Spain in 1898. Initially, Congress continued the local laws in effect to the extent they were compatible with federal law and the Constitution. *See* An Act Temporarily to provide revenues and a civil government for Porto Rico [sic], and for other purposes, ch. 191, § 8, 31 Stat. 77, 79 (1900) (commonly referred to as the Foraker Act). Congress also authorized the Territorial legislature to amend, alter, modify, or repeal local laws or ordinances. *Id.* § 15. In 1901, the Puerto Rican legislature appointed a code commission. *See, e.g.*, Dora Nevares Muñiz, *Evolution of Penal Codification in Puerto Rico: A Century of Chaos*, 51 REV. JUR. U.P.R. 87, 107-08 (1982). The commission's efforts culminated in the adoption of a code, including a penal code, in 1902. *See generally* REV. STAT. AND CODES OF P.R. (1902). The 1902 penal code was taken largely "from the California Penal Code of 1873, as amended up to 1901." Muñiz, *supra*, at 111 (internal quotation omitted). California's penal code was in turn modeled after an 1865 draft penal code for New York. *Id.* at 112. *See also* Eulalio A. Torres, *The Puerto Rico Penal Code*

21

including its aggravated assault and battery statute, from Texas in 1904. *See generally* P.R. LAWS ANN., tit. 33, §§ 821-28 (1937 ed.).[19] *Accord*

*of 1902-1975: A Case Study of American Legal Imperialism*, 45 REV. JUR. U.P.R. 1, 20 (1976). Assault and battery, but not aggravated assault and battery, were among the offenses codified in the 1902 code. *See* REV. STAT. AND CODES OF P.R., Penal Code, tit. XII, ch. VII, §§ 232, 234 (1902 ed.). However, two years later, Puerto Rico repealed the 1902 assault and battery statutes and adopted in their place statutes taken from the State of Texas. *See* An Act to Define and Punish Simple Assault, Simple Assault and battery, Aggravated Assault and Battery, and to Repeal Section 237 of the Penal Code, 1904 P.R. LAWS 48-51 (subsequently codified at P.R. LAWS tit. 33, §§ 821-28 (1937 ed.)). *Accord Ex Parte González*, 7 P.R.R. 451, 453-54, 7 P.R. Dec. 465 (1904) (noting repeal of 1902 assault and battery statutes by 1904 act).

[19] According to the Puerto Rico Penal Code, assault and battery were defined, in pertinent part, as follows:

Section 821.—The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing in itself an immediate intention, coupled with an ability to commit a battery, is an assault . . . .

Section 826.—An assault and battery becomes aggravated when committed under any of the following circumstances:

1. When committed upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty;

2. When committed in a court of justice, or in any place of religious worship, or in any place where persons are assembled for the purpose of innocent amusement;

3. When the person committing the offense goes into the house of a private family and is there guilty of an assault and battery;

4. When committed by a person of robust health or strength upon one who is aged and decrepit;

5. When committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child;

6. When the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery with a whip, cowhide or cane;

7. When a serious bodily injury is inflicted upon the person assaulted;

8. When committed with deadly weapons under circumstances not amounting to an intent to kill or maim;

9. When committed with premeditated design, and by the use of means calculated to inflict great bodily injury;

10. When committed by any person or persons in disguise.

Section 827.—The circumstances of aggravation mentioned in the preceding section are of different degrees, and the court is to consider these circumstances in forming the judgment and for assessing the punishment.

P.R. LAWS ANN. tit. 33, § 821, 826-27 (1937 ed.)).

*People v. Diaz*, 62 P.R.R. 477, 480, 62 D.P.R. 499 (1943) ("[T]here is the offense of assault and battery, defined and punished by the Act of March 10, 1904, incorporated into our Penal Code. This statute was taken from the Penal Code of Texas, § 587 et seq.") (internal citation omitted); *Lange v. People*, 24 P.R.R. 796, 797, 24 D.P.R. 854 (1917) ("[S]ections 1 to 8, inclusive, of the later law [Act of 1904] are literal copies of articles 587, 593, 594, 595, 598, 601, 602 and 603 of the Texas Penal Code."). As with Texas and Arizona, Puerto Rico also elevated assaults and batteries "committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child" to aggravated assaults and batteries. P.R. LAWS ANN. tit. 33, § 826(5) (1937 ed.). Puerto Rico made no further amendments to its assault and battery statutes before 1921.

At the time the 1921 CODES were enacted, at least three jurisdictions, the State of Texas, the Territory of Arizona, and the Territory of Puerto Rico, each criminalized assault and battery, including aggravated assault and battery, by statute. All three elevated to aggravated assaults and batteries "committed by an adult male upon the person of a female or child, or by an adult female upon the person of a child." TEX. PENAL CODE ANN. tit. 15, art. 1022(5) (1915 ed.); TERR. ARIZ. REV. STAT., Penal Code, part I, tit. VIII, ch. IX, § 215(3) (1901 ed.); P.R. LAWS tit. 33, § 826(5) (1937 ed.). Arizona and Puerto Rico took their statutes from Texas. The language of the gender-based classification is identical in all three statutes. Thus, that specific subsection does not shed light on the origin of the Virgin Islands statute. Comparing the entire aggravated assault and battery statute from each jurisdiction to the Virgin Islands statute does yield a definitive answer. Key differences among the three statutes reveals the jurisdiction the Virgin Islands took its statute from.

At the time it was first enacted, the Virgin Islands aggravated assault and battery statute enumerated ten aggravating factors. *See generally* 1921 CODES, tit. IV, ch. 5, § 32(1)-(10). The Arizona statute only listed six. Thus, Arizona was not the jurisdiction from which the Virgin Islands took its aggravated assault and battery statute. Both the Texas and the Puerto Rico statutes, however, enumerated the same aggravating factors and the same number of factors as the Virgin Islands statute. Moreover, Texas's and Puerto Rico's aggravating factors mirror each other — and

23

the Virgin Islands' — both in the ordering and the placement of the ten factors. Further, the text of those ten factors is identical, except for one word that appears only in the Puerto Rico statute and the Virgin Islands statute.

Under Puerto Rico law, an assault and battery became aggravated "[w]hen the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery *with a whip, cowhide or cane.*" P.R. LAWS ANN. tit. 33, § 826(6) (1937 ed.) (emphasis added). In Texas however, the same assault and battery became aggravated "[w]hen the instrument or means used is such as inflicts disgrace upon the person assaulted, as an assault or battery *with a whip or cowhide.*" TEX. PENAL CODE ANN. tit. 15, art. 1022(6) (1915 ed.) (emphasis added). Neither Texas nor Arizona included the word "cane." Puerto Rico added that term to its statute. The statute adopted in the Virgin Islands in 1921 also included the term cane. *See* 1921 CODES tit. IV, ch. 5, § 32(6).

But more than the term "cane" compels the conclusion that the Virgin Islands borrowed its aggravated assault and battery statute from Puerto Rico. While Puerto Rico did take its assault statutes from Texas, it also modified Texas law before adoption. *See Diaz,* 62 P.R.R. at 480 ("[A]lthough the statute of Puerto Rico is a copy of that of Texas, it is a fact that our Legislature, for reasons unknown to us, omitted § 588 of the Penal Code of Texas . . . .").[20] The assault and battery chapter in the Puerto Rico penal code comprised eight sections. Of the eight sections Puerto Rico borrowed from Texas, all but one appeared in the 1921 CODES. *See* 1921 CODES, ch. 5, §§ 27-33 (1921). Between the seven sections shared by Puerto Rico and the Virgin Islands, only a few words differ.[21]

---

[20] For example, Texas and Territorial Arizona's assault and battery statutes each provided that an assault and battery "may be committed by use of any part of the body of the person committing the offense, as of the hand, foot, head, or by the use of any inanimate object, as a stick, knife, or anything else capable of inflicting the slightest injury . . . ." TEX. PENAL CODE ANN. tit. 15, art. 1011 (1915 ed.); TERR. ARIZ. REV. STAT., Penal Code, part I, tit. VIII, ch. IX, § 211 (1901). The Puerto Rico assault and battery chapter omitted such language.

[21] For example, under the Puerto Rico code, "the exercise of the right of moderate restraint or correction given by law to the parents over the child, the guardian over the ward, the master over his apprentice, whenever the former be authorized by the father or guardian of the later so to do" was a defense to assault or assault and battery. P.R. LAWS ANN. tit. 33, § 822(1) (1937 ed.). The corollary version adopted by the Virgin Islands added the phrase "or minor

24

■ Having reviewed corollary statutes in force circa 1921 from Texas, Arizona, and Puerto Rico, the Court concludes that Puerto Rico's assault and battery statutes, particularly its aggravated assault and battery statute, most closely mirrors the statutes enacted by the Virgin Islands in 1921. Only Puerto Rico and the Virgin Islands elevated assaults committed with a cane to aggravated assault and battery. Accordingly, the Court finds that the Virgin Islands borrowed its assault and battery statutes, including its aggravated assault and battery statute, from the Territory of Puerto Rico in 1921.

## C. Judicial Interpretations of the Borrowed Statute

Having identified the jurisdiction from which Section 298(5) was borrowed, the Court must now consider the interpretations Puerto Rico gave the aggravated assault and battery statute prior to 1921. *Berkeley*, 480 F.2d 1088. Because Puerto Rico borrowed its statute from Texas in 1904, the Court will also note any decisions from Texas's highest court prior to 1904 where informative. *People v. Colón*, 25 P.R.R. 586, 586, 25 D.P.R. 629 (1917) ("This statute was copied from Texas . . . . The ordinary presumption would follow that we adopted the statute with the construction put upon it by the courts of Texas . . . .").

As interpreted by Texas's and Puerto Rico's highest courts, aggravated assault and battery by an adult male on a female does not require serious or great bodily injury or actual wounding; bruising would suffice. *El Pueblo v. Abino*, 21 P.R.R. 266, 267, 21 D.P.R. 281 (1914); *Waechter v. State*, 34 Tex. Crim. 297, 30 S.W. 444, 444 (1895) (affirming father's conviction for pushing and kicking his daughter), *cited with approval in People v. Oriols*, 27 P.R.R. 195, 196, 27 D.P.R. 208 (1919). Absent physical injury, the prosecution must show a sense of shame or constraint, and a lack of consent. *Hawes v. State*, 44 S.W. 1094 (Tex. Crim. App. 1898). An indecent assault by adult male on a female is an aggravated assault and battery. *See, e.g., George v. State*, 11 Tex. Ct. App. 95, 95 (1881) ("[V]iolent and indecent familiarity with the person of a female,

servant" and broadened "father" to "parent" generally. *See* 1921 CODES, tit. IV, ch. 5, § 28(I). The only other differences between the Puerto Rico and the Virgin Islands statutes involved the punishment imposed. *Compare id.* § 31 ("The punishment for a simple assault . . . shall *by fine not exceeding* fifty dollars.") (emphasis added) *with* P.R. LAWS ANN. tit. 33, § 825 (1937 ed.) ("The punishment for a simple assault . . . shall be *a fine of not less than one nor more than* fifty dollars.") (emphasis added).

against her will, with intent to have improper connection with her, is an aggravated assault."), *cited in Colón*, 25 P.R.R. at 586. *But see Slawson v. State*, 39 Tex. Crim. 176, 45 S.W. 575 (1898) (interpreting assault and battery with instrument or means that inflicts disgrace to include indecent assaults).

Husbands can be prosecuted for assaulting or battering their wives. *Owen v. State*, 7 Tex. Ct. App. 329 (1879). But husbands can also defend themselves against assaults by their wives. *Leonard v. State*, 27 Tex. Ct. App. 186, 11 S.W. 112, 112 (1889) ("There may not he much gallantry or chivalry in repelling with force assaults made by the wife. Still, at law, a husband has the right to defend himself, even against attacks of his wife; and, unless greater force is used than is necessary to repel the violence, he would not be guilty of an assault or battery.").

An adult male cannot be charged with simple assault on a female. *Ross v. State*, 45 S.W. 808 (Tex. Crim. App. 1898) (upholding jury verdict of simple assault against father who disciplined daughter as lesser-included offense of aggravated assault). *Accord Uren v. State*, 27 Ariz. 491, 232 P. 398, 399 (1925) ("[A]n adult male person is incapable of committing a simple assault or a simple battery upon the person of a female. Any assault or any battery, however slight, is under this statute an aggravated one."). Similarly, a man does not become an adult for purposes of the statute until he is "over twenty-one years of age." *Colón*, 25 P.R.R. at 586 (citing, *inter alia, Schenault v. State*, 10 Tex. Ct. App. 410, 411 (1881) ("[O]ne cannot he convicted of an aggravated assault or battery on a female or a child until arriving at the age of twenty-one years . . . .") (additional citations omitted)); *Ellers v. State*, 55 S.W. 813 (Tex. Crim. App. 1900). Whether a male was over the age of twenty-one at the time the offense occurred is a fact to be proven at trial. *Colón*, 25 P.R.R. at 586-87. *Accord Davis v. State*, 76 S.W. 466, 467 (Tex. Crim. App. 1903) ("We are not authorized to indulge any presumption against appellant. If he is convicted of any offense, it must be upon evidence; and here we find no evidence to sustain the fact that he was an adult male . . . ."), *cited in Colón*, 25 P.R.R. at 586. The trier of fact may also infer adulthood and sex if apparent at trial. *Tracy v. State*, 44 Tex. 9 (1875).

## D. Subsequent Amendments to the Statute

The Virgin Islands has amended its aggravated assault and battery statute four times since it was incorporated into the Code in 1957. The

Legislature first amended Section 298 in 1967 to increase the minimum sentence to not less than thirty days of imprisonment for anyone "who has been once convicted of an assault and battery with deadly weapons under circumstances not amounting to an intent to kill or maim . . . ." Act No. 1914, § 3, 1967 V.I. Sess. L. p. 107-08.

In 1971, the Legislature deleted three of Section 298's ten aggravating factors and relocated them under assault in the third degree. *See* Act No. 2937, §§ 2-3, 1970 V.I. Sess. L. p. 427-28. *Compare* 14 V.I.C. § 297 (1964 ed.) *with id.* § 297(1)-(5) (1996 ed.). Other than renumbering Section 298(10), regarding assaults committed while in disguise, as Section 298(7), the Legislature did not alter the other subsections.

The Legislature next amended Section 298 in 2010 as part of the "The Domestic Violence Prevention Act of 2010." *See generally* Act. No. 7180, 2010 V.I. Sess. L. 107 (codified in scattered sections of V.I. CODE ANN. tit. 14, 16, 28). The penalty for an aggravated assault committed during an act of domestic violence was increased to a fine of not less than one thousand dollars or imprisonment for not less than five years. 14 V.I.C. § 298 (Supp. 2011).

Lastly, in 2011, the Legislature amended Section 298 to add two new aggravating factors. *See generally* Act No. 7267, 29th Leg., Reg. Sess. § 6 (V.I. 2011) (to be codified at V.I. CODE ANN. tit. 14, § 298(8)-(9)), *available at* VI LEGIS 7267 (Westlaw). Under the current statute, assault and battery becomes aggravated when committed on a teacher or school employee while on school grounds or on a caseworker, investigator, or other health and human services employee in the performance of an official duty.

## IV. PROFFERED JUSTIFICATION FOR GENDER CLASSIFICATION

The People proffered two bases to justify the gender-based classification in the aggravated assault and battery statute: (1) the important government objectives determined in a prior court decision; and (2) the prevalence of gender-based domestic violence. "Although the test for determining the validity of a gender-based classification is straightforward, it must be applied free of fixed notions concerning the roles and abilities of males and females. Care must be taken in ascertaining whether the statutory objective itself reflects archaic and stereotypic notions." *Miss. Univ. for Women*, 458 U.S. at 724-25. Below, the Court will consider both bases.

## A. Court-Determined Government Objectives

The first justification the People put forth did not actually articulate an important government objective for Section 298(5). Rather, the People direct the Court to the government objectives determined by the Territorial Court of the Virgin Islands in *Government v. Prescott*, 18 V.I. 110 (Terr. Ct. 1981). (People's Br. 3-4, filed Sept. 16, 2011.) In April 1981, Elmira Espinosa accused Rudolph Prescott of committing assault and battery upon her. *Government v. Prescott*, 18 V.I. 152, 153 (Terr. Ct. 1982). Prescott was arrested and charged with one count of aggravated assault and battery in violation of Title 14, Section 298(5) of the Virgin Islands Code. *Id.* Before trial, he moved to dismiss the charge, claiming the statute denied him equal protection of the law based on his gender. *Prescott*, 18 V.I. at 111. In support, he averred that

> a midget of a man could be assaulted and pounded, battered and bruised by a woman of amazon proportions and it would result in the woman being only charged with a simple assault and battery . . . . [S]hould the same midget of a man, however, hit this woman of mammoth, gigantic or amazon proportions and inflict little or no damage upon her he could be, and would be . . . guilty of aggravated assault and battery . . . .

*Id.* (internal quotations and citations omitted). This result, he argued, represented "blatant, arbitrary, sexual discrimination of the worst sort." *Id.* (internal quotation omitted). The court did not agree. *Id.*

In reaching its conclusion, the *Prescott* court examined a decision from the Texas Court of Criminal Appeals and a decision from the Territorial Court of the Virgin Islands that had considered and rejected the identical argument raised by Prescott. *Id.* at 112-13 (discussing *Buchanan v. State*, 480 S.W.2d 207 (Tex. Crim. App. 1972), *appeal dismissed*, 409 U.S. 814, 93 S. Ct. 175, 34 L. Ed. 2d 71 (1972), and *Government of the Virgin Islands v. Smith* (Div. St. Thomas/St. John 1979/166) (unreported). Texas, like the Virgin Islands, criminalized assault and battery by an adult male on a female as aggravated assault and battery. Male defendants in both cases claimed that the respective aggravated assault and battery statutes denied them equal protection of the law based on their gender. Both courts found females generally smaller and weaker than males. As a result, females were more likely to suffer serious injury if assaulted or

battered by males. Preventing such injury, both courts concluded, was a legitimate government objective and a rational way of achieving that objective was to increase the punishment against males. Both cases persuaded the *Prescott* court that Section 298(5) was constitutional.

Because *Prescott* found justification for Section 298(5), the People maintain that those findings are "entitled to great deference." (People's Br. 3 (citing *Michael M. v. Super. Ct. of Sonoma Cty.*, 450 U.S. 464, 470, 101 S. Ct. 1200, 67 L. Ed. 2d 437 (1981) (plurality opinion)).) Simmonds disputes that contention. According to him, *Prescott* is not owed any deference at all because the decision "was not valid even when it was entered." (Def. Br. 25, filed Sept. 30, 2011.) The People are correct that court findings regarding the justification for a statute are entitled to great deference. *Michael M.*, 450 U.S. at 470 (citing *Reitman v. Mulkey*, 387 U.S. 369, 373-74, 87 S. Ct. 1627, 18 L. Ed. 2d 830 (1967)). But the government's justifications are only entitled to deference if the court actually accepts the justification. *Id.* ("The justification for the statute *offered by* the State, *and accepted by* the Supreme Court of California, is that the legislature sought to prevent illegitimate teenage pregnancies. That finding . . . is entitled to great deference.") (emphasis added). Here, there are no findings in *Prescott* that this Court must defer to. *Prescott* did not state what justifications, if any, the government offered, which it accepted, regarding Section 298(5). *Prescott* did not, for example, refer to any legislative history for Section 298 or subsequent amendments to the statute. *Prescott* did not discuss the adult male aggravating factor in comparison with any other enumerated factor in the same statute. *Prescott* did agree with the Texas Court of Criminal Appeals that the statute "failed to achieve its objective in every instance . . . ." *Prescott*, 18 V.I. at 112. The court, nevertheless, concluded that "the general classification embodied in the statute was reasonably calculated to achieve the overall objective." *Id.* What that objective was, however, *Prescott* did not state.

The People mistakenly construe *Prescott*'s holding as findings. A court's holding is its "determination of a matter of law pivotal to its decision." BLACK'S LAW DICTIONARY 800 (9th ed. 2009). A finding, however, is a "determination by a judge . . . of a fact supported by the evidence in the record . . . ." BLACK'S LAW DICTIONARY 708 (9th ed. 2009). While *Prescott* did hold the gender-based classification to be constitutional, *Prescott* did not state any findings as to Section 298. In just over two pages, the court presented the defendant's argument, expressed

29

appreciation for differences between men and women,[22] summarized the opinions in *Buchanan* and *Smith*, and then adopted *Smith*'s reasoning as support for denying Prescott's motion to dismiss. *Prescott*, 18 V.I. at 113 ("This Court adopts, in toto, *the reasoning of* my colleague in *Government v. Smith* . . . .") (emphasis added). Because *Prescott* expressly relied on *Smith* to reach its decision, the Court will consider that decision as well.[23]

Like *Prescott*, the defendant in *Smith* also claimed that Section 298(5) "created a classification based upon sex which [ran] afoul of the Fourteenth Amendment and denie[d] him equal protection of the law." *Government v. Smith*, No. ST-79-CR-166 (V.I. Terr. Ct. Mem. Op. at 2 (Jan. 3, 1980)) (unreported). Smith contended that the Virgin Islands Legislature initially included the gender classification when it adopted the aggravated assault and battery statute in 1921 because at the time "females were considered to be the weaker of the two sexes and were liable to suffer more harm when assaulted." *Id.* at 3. "[A]lthough this might have been the case in 1921," the defendant argued, "it no longer holds true today." *Id.* The court agreed that Section 298 derived from the original aggravated assault and battery statute enacted in 1921. *Id.* at 4. But the court noted that the Legislature amended Section 298 in 1971 to delete three of the original ten aggravating factors. *Id.* Subsection five was reinstated without change. *Id.* That "indicat[ed] legislative approval of the judicial interpretations of that provision rendered up to that date." *Id.* (citing Sutherland, *Statutes and Statutory Construction* § 45.21 (4th ed. 1973)). The court concluded that Section 298(5) "exemplifies a considered legislative judgment that females warrant a special protection from male attackers . . . ." *Id.* The defendant needed more than "changing attitudes about the equality of the sexes" to prove Section 298(5) unconstitutional. *Id.* at 4. That he did not have. The court held that the defendant "clearly failed to establish that 14 V.I.C. § 298(5) works arbitrarily to place persons in categories on the basis of criteria wholly

---

[22] The court noted that "[t]hough there are many who would say that in today's world women seek to be considered the equal of men in any and all respects, this Court is of the opinion that there are basic differences regarding which it says 'Vive La Difference.' " *Prescott*, 18 V.I. at 111. The Court then denied Prescott's motion to dismiss. *Id.*

[23] Because *Prescott* relied on *Smith*, an unreported opinion, the Court retrieved a copy of that decision from the original criminal file in storage.

unrelated to the purpose of the statute." *Id.* at 5 (citing *Reed v. Reed*, 404 U.S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971)).

Both *Prescott* and *Smith* subjected Section 298(5) to a rational basis review. *Prescott*, 18 V.I. at 112 ("[S]tatutes which affect a particular class must be based on rational distinctions or classifications . . . .") (citing *Rinaldi v. Yeager*, 384 U.S. 305, 308-09, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966) (applying rational basis review to statute withholding only wages of incarcerated inmates who are not on suspended sentences to reimburse cost of transcript preparation)); *Smith*, at 3 ("Defendant vies for the application of a stricter standard of review . . . because a sex based classification is involved . . . . This court concludes . . . that 'rational basis' is the standard by which this gender based equal protection claim must be gauged.") (citing *Benjamin v. Cleburne Truck & Body Sales, Inc.*, 424 F. Supp. 1294, 13 V.I. 545 (D.V.I. 1976) (applying rational basis review to restatement principle allowing husbands but not wives to bring suit for loss of consortium)). Yet almost four years before *Smith*, and five years before *Prescott*, the Supreme Court of the United States held in *Craig v. Boren* that "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."[24] *Craig v. Boren*, 429 U.S. 190, 197, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976). Three years later, the Supreme Court, in three separate opinions handed down in 1979, reaffirmed that standard of review for classifications based on gender. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979) ("[T]his Court's recent cases teach that [gender-based] classifications must bear a close and substantial relationship to important governmental objectives, and are in many settings unconstitutional.") (citations omitted); *Caban v. Mohammed*, 441 U.S. 380, 388, 99 S. Ct. 1760, 60 L. Ed. 2d 297 (1979) ("Gender-based distinctions must serve important governmental objectives and must be substantially related to achievement of those objectives in order to withstand judicial scrutiny under the Equal

---

[24] Justice Powell noted in a concurring opinion in *Craig* that "the Court has had difficulty in agreeing upon a standard of equal protection analysis that can be applied consistently to the wide variety of legislative classifications." *Craig v. Boren*, 429 U.S. 190, 210, 97 S. Ct. 451, 50 L. Ed. 2d 397 n.* (1976) (Powell. J., concurring). But he also acknowledged that "the relatively deferential 'rational basis' standard of review normally applied takes on a sharper focus when we address a gender-based classification." *Id.* As discussed above, subsequent decisions confirmed the standard-of-review for classifications based on gender.

Protection Clause.") (internal quotation omitted); *Orr v. Orr*, 440 U.S. 268, 279, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979) ("To withstand scrutiny under the Equal Protection Clause, classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.") (internal quotations omitted). The Court reaffirmed that standard a year later. *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150, 100 S. Ct. 1540, 64 L. Ed. 2d 107 (1980) ("[O]ur precedents require that gender-based discriminations must serve important governmental objectives and that the discriminatory means employed must be substantially related to the achievement of those objectives.") (citations omitted). Of particular import, the Court in *Wengler* also held that the burden in cases challenging gender-based classifications was "on those defending the discrimination to make out the claimed justification . . . ." *Id.* at 151. The Court reaffirmed this burden-placement less than a year later. *Kirchberg v. Feenstra*, 450 U.S. 455, 461, 101 S. Ct. 1195, 67 L. Ed. 2d 428 (1981) ("[T]he burden remains on the party seeking to uphold a statute that expressly discriminates on the basis of sex to advance an 'exceedingly persuasive justification' for the challenged classification.") *But see Michael M.*, 470 U.S. at 468-69 ("[T]he Court has had some difficulty in agreeing upon the proper approach and analysis in cases involving challenges to gender-based classifications . . . . Our cases have held, however, that the traditional minimum rationality test takes on a somewhat 'sharper focus' when gender-based classifications are challenged.") (citations omitted).

*Craig, Caban, Feeney*, and *Orr* were all decided prior to both *Smith* and *Prescott*. Despite binding Supreme Court precedent mandating heightened scrutiny for gender-based classifications, both *Smith* and *Prescott* applied rational basis review in their decisions. Moreover, in line with *Wengler*, neither *Smith* nor *Prescott* should have placed the burden on the defendant. While *Smith* found justification for Section 298(5), which *Prescott* impliedly adopted, any deference owed those findings is reduced by the failure to apply the proper standard of review.

### B. Prevalence of Gender-Based Domestic Violence in the Virgin Islands

The second basis the People offer to justify the gender classification in the aggravated assault and battery statute is "the historical acceptance of domestic violence perpetrated on women in the Caribbean . . . ." (People's

Br. 6.) Section 298(5) serves to combat domestic violence perpetrated against women, the People assert. In support, the People direct the Court to the remarks of a senator, a lecture given by a judge, and reports in the local newspapers. *Id.* at 6-8. The Court will examine each below.

The People's first support for the domestic violence function Section 298(5) serves is the remarks of Virgin Islands Senator Terrence Nelson at an April 2010 hearing on the Domestic Violence Prevention Act before the Committee on Public Safety, Homeland Security, and Justice. (*See generally* App. to People's Br. (transcript of *The Domestic Violence Prevention Act of 2010: Hearing on B. No. 28-0177 Before the Comm. on Pub. Safety, Homeland Sec., and Just.*, 28th Leg. (V.I. Apr. 21, 2010)).) In 2010, the Legislature of the Virgin Islands enacted "The Domestic Violence Prevention Act of 2010." Act. No. 7180, 2010 V.I. Sess. L. 107 (codified in scattered sections of V.I. CODE ANN. tit. 14, 16, 28.) The Act allocated funds to raise public awareness about domestic violence and passed legislation to protect victims of domestic violence from retaliation by landlords and employers. The Act also made any aggravated assault and battery committed as an act of domestic violence a felony. *Id.* § 3(a)(2) (codified at V.I. CODE ANN. tit. 14, § 298 (Supp. 2011)). During debate on the legislation, Senator Terrence Nelson "made several remarks regarding the history of domestic violence in the Territory." (People's Br. 6.) Those remarks, the People infer, reveal the important government objective Section 298(5) serves in combatting domestic violence. *Id.*

■ Judicial inquiry into legislative "motives or purposes are a hazardous matter and the search for the 'actual' or 'primary' purpose of a statute is likely to be elusive." *Michael M.*, 450 U.S. at 469 (internal quotations omitted). In some instances, "legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977). But "[i]t is difficult or impossible for any court to determine the 'sole' or 'dominant' motivation behind the choices of a group of legislators." *Palmer v. Thompson*, 403 U.S. 217, 225, 91 S. Ct. 1940, 29 L. Ed. 2d 438 (1971). Here, the Senator's own remarks actually contradict the People's assertion. During the hearing, Senator Nelson acknowledged that he "heard it mentioned that domestic abuse is culturally accepted in the Caribbean." (App. to People's Br. 22.) But he immediately rejected that

notion. "I don't think it's something we should say . . . because I don't think it's something we accept," the Senator stated. *Id.* "It has happened. It has happened around the world, unfortunately, also." *Id.* Another Senator, Wayne James, also commented earlier in the hearing that it was "not uncommon in the Virgin Islands to hear people, men in particular[,] say that somebody has to be in charge of the house. And being in charge of the house entails physically disciplining people on occasion. From partner down to children." *Id.* at 8. Senator James explained that "it never occurred to [him] that what [he] grew up with as culturally acceptable was illegal." *Id.* at 7. "It was commonplace to sort of make remarks about women and what they were wearing and how they looked. That was just the way." But Senator James prefaced his remarks with reference to the controversy involving Anita Hill and Clarence Thomas. *Id.* That controversy concerned sexual harassment, not domestic violence. *See, e.g.*, David Kairys, *The Thomas-Hill Sex Harassment Hearings*, 1 Temp. Pol. Civ. Rts. L. Rev. 107 (1992). No senator stated during the hearing that domestic violence against women was historically accepted in the Caribbean or in the U.S. Virgin Islands in particular, the location most relevant here.

█ The Court cannot uphold, or strike down, Section 298(5) based solely on Senator Nelson's remarks. Just as "there is an element of futility in a judicial attempt to invalidate a law because of the bad motives of its supporters," *Palmer*, 403 U.S. at 225, a judicial attempt to uphold a law because of the good motives of its supporters is similarly futile. "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it . . . ." *United States v. O'Brien*, 391 U.S. 367, 384, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968). "[I]ndividual legislators may have voted for the statute for a variety of reasons." *Michael M.*, 450 U.S. at 470. Moreover, the individual statements of legislators have no bearing on a statute's interpretation particularly where the legislator did not sponsor the legislation in question. *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488, 493-94, 51 S. Ct. 510, 75 L. Ed. 1183 (1931).

The People attempt to find additional support for Section 298(5)'s domestic violence function in the remarks of the Honorable Madam Justice Désirée Bernard, Judge of the Caribbean Court of Justice, given during a public lecture series held in November 2006 at the University of the West Indies in Mona, Jamaica. (People's Br. 6-7 (citing Hon. Mme.

34

Justice Désirée Bernard, Carib. Ct. J., Confronting Gender-Based Violence in the Caribbean, Remarks at the Fifth Biennial Lucille Mathurin Mair Public Lecture (Nov. 29, 2006), *available at* http://www.caribbeancourtofjustice.org/old/papers_addresses.html).) The People cite Justice Bernard to underscore "[t]he historical acceptance of domestic violence perpetrated on women in the Caribbean . . . ." *Id.* at 6. But here, too, the proffered support actually detracts from the People's claimed assertion.

In her remarks, Justice Bernard commented that

> [t]he most common and frequently-encountered form of violence occurs in domestic situations; research indicates that women are more likely to be abused, killed or injured within a family setting. It ranges from slaps and kicks to more serious assaults as wounding with knives and other implements sometimes resulting in death. These assaults may be sporadic or consistent on a daily or weekly basis, and invariably are unpredictable with no reference to any act committed by the woman. They may be the result of alcohol or drug consumption by the husband or partner in a family relationship or a personality defect with the abuser seeing the need to inflict pain on the person closest to him.

(Bernard 2.) One reason why domestic violence persists, Bernard explained, is because of "the historical philosophy of women's subordination and inferiority to men. Women were, and many still are, conditioned to believe in the superiority of their male partners in any relationship." *Id.* Another explanation is that "[i]n marital and common law relationships wives convince themselves that their vows or conjugal duties include occasional punishment from their spouses or partners . . . ." *Id.* at 3. These "duties," Bernard pointed out, are "frequently glorified in calypsoes and dance hall music." *Id.* This sort of pervasive acceptance of gender-based domestic violence, the People claim, "can be stymied by . . . programs and legislation to discourage and eliminate gender-based violence." (People's Br. 7.) One objective of Section 298(5) is to combat pervasive acceptance of gender-based violence.

■ The People are correct that legislation can serve to discourage and eliminate gender-based domestic violence. But the People have not shown how the gender-based classification employed in the Virgin Islands aggravated assault and battery statute was enacted with the goal of discouraging and eliminating domestic violence. Justifications offered in

35

support of gender-based classifications "must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Virginia*, 518 U.S. at 533. They cannot rest "on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Id.* "Intentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly where . . . the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *J.E.B. v. Alabama ex. rel. T.B.*, 511 U.S. 127, 130-31, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). Moreover, " 'benign' justifications proffered in defense of categorical exclusions will not be accepted automatically; a tenable justification must describe actual [governmental] purposes, not rationalizations for actions in fact differently grounded." *Virginia*, 518 U.S. at 535-36 (citing *Wiesenfeld*, 420 U.S. at 648, n.16).

Unfortunately, domestic violence remains a difficult and disturbing social problem that must he eradicated. But as Simmonds correctly pointed out, "[d]omestic violence is a problem for everybody — men, women, children." (Def. Br. 21.) It is not a problem unique to the Virgin Islands or the Caribbean. *See, e.g.*, Emily J. Sack, *Battered Women & the State: The Struggle for the Future of Domestic Violence Policy*, 2004 WIS. L. REV. 1657, 1666 ("[U]ntil approximately twenty-five years ago, the [American] criminal justice system did not recognize domestic violence as an issue of concern, much less focus on methods to attack it."). Indeed, the People's assertion that Caribbean peoples have historically accepted gender-based domestic violence is troubling.

Geographically, the Virgin Islands is situated within the Caribbean Sea. Over the years, people from across the Caribbean region immigrated here in search of a better life.[25] Common histories, comparable struggles, and

---

[25] *See, e.g., Frett-Smith v. Vanterpool*, 511 F.3d 396, 398 (3d Cir. 2007) ("Smith was born in Tortola, British Virgin Islands . . . and spent much of her childhood in St. Thomas . . . . She became a naturalized United States citizen in 1975."); *Hodge v. Hodge*, 14 V.I. 238 (Terr. Ct. 1977) (noting plaintiff moved from Antigua to St. Croix); V.I. CODE ANN. tit. 1, § 181(a) (1995) ("The fourth Friday in August and the following ten (10) days thereafter shall be observed, each year, as the Caribbean Friendship Week Festival throughout the Virgin Islands. Such festival shall emphasize the bonds of friendship between all peoples of the Caribbean."); *id.* § 171(a) (designating second Monday in October as Columbus Day and Puerto Rico Friendship Day); *id.* § 195(a) ("Three Kings Day shall be celebrated on January 6 each year, on the island of St. Croix. The celebration shall emphasize and maintain the Hispanic

other corollary experiences around the region have imparted many traditions, values, and beliefs shared by all Caribbean peoples, including Virgin Islanders.[26] But not every Virgin Islander initially called the Caribbean home. Some trace their roots directly back to Europe.[27] Others relocated here from the mainland.[28] "The diverse ethnicity of the Virgin Islands people . . . includes Amerindian, African, European, and Caribbean/West Indian heritages . . . ." V.I. CODE ANN. tit. 3, § 408(a)(3) (1995). Notwithstanding this unique diversity, the People assert that this purported historical acceptance of domestic violence by one group (albeit the largest) — people of Caribbean descent — justifies a criminal statute that, by definition, must apply to all groups of people living in the Virgin Islands. However, Section 298(5) does not criminalize only assaults and batteries committed by Caribbean males on females. It criminalizes assaults and batteries committed by any adult male regardless of his cultural background, ethnic heritage, or even citizenship. Thus, the People's assertion of a Caribbean "historical acceptance" of domestic violence is an exceedingly unpersuasive justification for the gender-based classification at issue here.

The last basis the People offer in support of a domestic violence function for Section 298(5) is the volume of domestic violence perpetrated against women. The People point out that "[s]ince the beginning of 2011, there [were] eleven (11) cases charging women with committing acts of domestic violence in the St. Thomas/St. John district.

heritage and culture existing in the Virgin Islands, especially on the island of St. Croix."). *See also* Act. No. 1076, pmbl., 1964 V.I. Sess. L. p. 20 ("Whereas for over a hundred years people from various parts of the West Indies have been coming to the Virgin Islands . . . have inter-married with Virgin Islanders . . . [and] in many cases have become American citizens . . . .") (designating first Monday in September as West Indies Solidarity Day) (codified at V.I. CODE ANN. tit. 1, § 171(c) (1997)).

[26] *See, e.g.*, Act. No, 1076, pmbl., 1964 V.I. Sess. L. p. 20 ("Whereas even before the arrival of these [West Indian] immigrants on our shores the Virgin Islands was closely linked to other parts of the West Indies by bonds of culture, African heritage and common background . . . .").

[27] *See, e.g.*, V.I. CODE ANN. tit. 1, § 185 (1995) ("The Governor of the Virgin Islands is hereby authorized and directed in each year to proclaim the calendar week in July ending with Bastille Day, the 14th day of the month as French Heritage Week.").

[28] *See, e.g., Ballentine v. United States*, 486 F.3d 806, 808, 48 V.I. 1059 (3d Cir. 2007) ("Ballentine was born in Missouri . . . [but later] transferred to the United States Virgin Islands [where he] took permanent residence . . . ."); *Homer v. Lorillard*, 6 V.I. 645, 647 (St. Croix Mun. Ct. 1968) ("Plaintiff . . . moved to St. Croix from Brooklyn, New York . . . with the intention of making her home here.").

During the same period of time, there [were] fifty-two cases of domestic violence pending against men." (People's Br. 7.) It is this "high[er] incidence of domestic violence committed against women," the People argue, that "necessitate[s] the special protection of women against men in the higher form of punishment for men as a deterrent." *Id.* The Court need only "look at the local newspaper to see [the] continuing relevance" of Section 298(5). *Id.* at 8. Simmonds rejects this assertion. The People's point, he argues, "is that men cause more acts of domestic violence than women. Therefore, this law is necessary to protect women." (Def. Br. 24.) Simmonds claims that "[t]he research is now overwhelming that women are as likely to abuse." *Id.* at 31 (citing Amanda J. Schmesseer, Note, *Real Men May Not Cry, But They are Victims of Domestic Violence: Bias in Application of Domestic Violence Laws*, 58 SYRACUSE L. REV. 171, 191-92 (2007)). Section 298(5) perpetuates this problem, Simmonds asserts, and contradicts the Territory's "gender neutral policy for solving the issues of gender relations." *Id.* at 15. "The evil is violence not gender . . . ." *Id.* at 32.

▌ The Virgin Islands first enacted laws addressing domestic violence in 1984. *See generally* Act No. 5013, § 9, 1984 V.I. Sess. L. p. 342, 347. That legislation defined domestic violence victims as

> emancipated minors or persons 18 years of age or older of the opposite sex who have resided together or who currently are residing in the same living quarters or persons who together are the parents of one or more children, regardless of their marital status or whether they have lived together at any time.

*Id.* § 9. To receive the protections of the statute, a victim of domestic violence had to be the opposite gender of the perpetrator. Six years later, the Legislature substantially revised the Territory's domestic violence laws. *See generally* Act No. 5646, § 4, 1990 V.I. Sess. L. p. 365, 369. The Territory declared the stated goals of the domestic violence laws to be: maximum protection, prompt remedy, effective police assistance, public awareness, and equal enforcement of the criminal laws. V.I. CODE ANN. tit. 16, § 90(a)(1)-(5) (1999). In furtherance of those goals, the definition of a domestic violence victim was revised to include

> any person who has been subjected to domestic violence by a spouse, former spouse, parent, child, or any other person related by blood or

38

marriage, a present or former household member, a person with whom the victim has a child in common, or a person who is, or·has been, in a sexual or otherwise intimate relationship with the victim.

*Id.* § 91(c). Under the revised definition, a wife battered by her husband would still qualify as a victim of domestic violence. But so would a father battered by his son or a mother by her daughter or a female roommate of another female roommate. Before the revision, a younger brother beaten by his older brother could not avail himself of the protections offered to domestic violence victims. By expanding the definition of "victim" beyond opposite sex, the Territory extended protection to the entire domestic sphere. Domestic violence laws apply equally, and are equally enforced, whether the individuals involved are of the same or opposite genders. *See, e.g., Nibbs v. People*, 52 V.I. 276 (2009) (domestic violence involving two brothers); *Murrell v. Virgin Islands*, 51 V.I. 1095 (D.V.I. App. Div. 2009) (domestic violence involving male and female); *Laudat v. Virgin Islands*, 48 V.I. 892 (D.V.I. App. Div. 2007) (domestic violence involving son and mother). (*Accord* App. to People's Br. 17-18 (testimony of Clema Lewis, Co-Director, Women's Coalition of St. Croix) ("[W]e've had several cases where we were able to get Restraining Orders for same sex . . . . They're treated like heterosexual couples.").)

The People fail to explain the inconsistency between gender-neutral domestic violence laws and equal enforcement of the criminal laws with the gender-specific aggravated assault and battery statute. Section 298(5), Simmonds argues, "is not gender neutral and is at war with th[at] policy." (Def. Br. 16.) Instead, Section 298(5) *"predetermined,* based on information obtained prior to 1921, that males are the problem and females are not . . . ." *Id.* (emphasis in original). That stands in direct contradiction to the gender-neutral goals of domestic violence laws. Even Justice Bernard, whom the People relied upon, acknowledged, at the outset of her address, the gender-neutral aspect to domestic violence: "[w]hen one considers the whole issue of gender-based violence one immediately conjures up in one's mind violence against women *despite the gender-neutral term* . . . ." (Bernard 1 (emphasis added).) This term, she explained, "include[s] the all-pervasive scourge of violence committed *against both male and female victims." Id.* (emphasis added). Justice Bernard did stress, however, that "in the overwhelming majority of incidents of violence women are the victims." *Id.* But she also

39

cautioned that "[w]ith increasing frequency, males (boys *and adult men*) are becoming victims of violence perpetrated *against them by females.*" *Id.* (emphasis added).

## V. CONCLUSION

 In determining whether a statute is constitutional, courts examine the statute "in terms of its 'immediate objective,' its 'ultimate effect' and its 'historical context and the conditions existing prior to its enactment.' " *Reitman v. Mulkey,* 387 U.S. 369, 373, 87 S. Ct. 1627, 18 L. Ed. 2d 830 (1967). The Court has examined both justifications proffered by the People. Neither are exceedingly persuasive. While deterring and preventing violence is undoubtedly a legitimate and important objective for the Territory, courts "need not in equal protection cases accept at face value assertions of legislative purposes, when an examination of the legislative scheme and its history demonstrates that the asserted purpose could not have been a goal of the legislation." *Weinberger v. Wiesenfeld,* 420 U.S. 636, 648 n.16, 95 S. Ct. 1225, 43 L. Ed. 2d 514 (1975) (citing *Jimenez v. Weinberger,* 417 U.S. 628, 634, 94 S. Ct. 2496, 41 L. Ed. 2d 363 (1974); *U.S. Dept. of Agriculture v. Moreno,* 413 U.S. 528, 536-537, 93 S. Ct. 2821, 37 L. Ed. 2d 782 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972)). Although "[t]he Equal Protection Clause does not countenance . . . speculative probing into the purposes of a coordinate branch," *McGinnis v. Royster,* 410 U.S. 263, 277, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973), courts have "rejected one asserted purpose as impermissible, but then considered other purposes to determine if they could justify the statute." *Michael M.,* 450 U.S. at 472 n.7. Thus, the Court also considered the origin and background the aggravated assault and battery statute in its analysis.

Here, the People claim that the objective for Section 298(5) is to protect women from violence, including domestic violence, by men. But the People have not explained how a statute, more than 150 years old, can have as its objective the eradication of domestic violence, something that only became a concern in recent years. While the Virgin Islands did amend Section 298 four times subsequent to its recodification in 1957 in the Virgin Islands Code, none of those amendments reveals a legislative determination to make aggravated assaults by males on females in the context of domestic violence the purpose for section 298(5)'s gender-

based classification. Historically, this type of statute was used as a shield to deter assaults from being committed in certain locations — private homes, courts of justice, places of worship, or places where people gather for innocent amusement — or against certain persons society wanted to protect, such as police officers, children, or older persons. Women were also among the persons protected by the statute. The Legislature's recent amendments to Section 298 further reinforce this purpose: an assault and battery committed on a teacher or social worker is now elevated to aggravated assault and battery.

If Section 298's goal is to deter violence, particularly domestic violence as the People claim, then the statute fails to achieve that goal because assault and battery as an act of domestic violence committed against a male by a female or another male, unattended by aggravating circumstances, can only be prosecuted as simple assault and battery, a misdemeanor offense. The Constitution guarantees equal protection based on gender. Classifications based on gender must have legitimate objectives that are substantially related to the statute's purpose. Here, there is no legitimate basis for punishing males more severely than females for committing the same criminal act: assault and battery. Moreover, if the objective was to deter men from committing acts of violence, including domestic violence, against women by increasing the punishment for assault and battery, that objective fails when males commit assault in the first, second, or third degree on females. Gender is not a factor in the commission of those more serious offenses. *See, e.g.*, 14 V.I.C. §§ 295-97.

"Legislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing the stereotypes about the 'proper place' of women and their need for special protection. Thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination must be carefully tailored." *Orr v. Orr*, 440 U.S. 268, 283, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979) (internal citation omitted). Here, since the government's purpose can be just as well "served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the [government] cannot be permitted to classify on the basis of sex." *Id.* Accordingly, the Court finds that the People have failed to show that important government objectives are served by the Virgin Islands aggravated assault statute and have not shown that the statute is

41

substantially related to the achievement of those objectives. Since the statute employs a gender-based classification on its face and does not survive intermediate scrutiny review, the statute violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## FINDINGS OF FACT

### I. GOVERNING LAW

#### A. Equal Protection

(1) The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution applies to the U.S. Virgin Islands through the Revised Organic Act of 1954, as amended. Rev. Org. Act § 3 (1954).

(2) "No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws." Rev. Org. Act § 3 (1954).

(3) Statutes employing a classification based on gender are subject to intermediate scrutiny. *Hynson v. City of Chester, Legal Dept.*, 864 F.2d 1026, 1029 (3d Cir. 1988)).

(4) [17] Statutes discriminating against males are subject to the same scrutiny and standard of review as those discriminating against females. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982); *Orr v. Orr*, 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979); *Craig v. Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976).

(5) [18] The burden rests on the government to show that classifications based on gender are substantially related to achieving important governmental objectives. *United States v. Virginia*, 518 U.S. 515, 533, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996).

(6) Whether the justification proffered by the government is exceedingly persuasive is determined by the court. *United States v. Virginia*, 518 U.S. 515, 533, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996).

(7) If accepted by the court, the government's justification is entitled to great deference. *Michael M. v. Super. Ct. of Sonoma Cty.*, 450 U.S.

464, 470, 101 S. Ct. 1200, 67 L. Ed. 2d 437 (1981) (plurality opinion).

(8) ■■■ Government justification for gender-based classifications "must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations about the different . . . capacities . . . of males and females." *United States v. Virginia*, 518 U.S. 515, 533, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996).

## B. Domestic Violence Laws

(9) In 1984, the Virgin Islands recognized domestic violence as a problem and enacted legislation to remedy it. *See generally* Act No. 5013, 1984 V.I. Sess. L. p. 342, 347-54 *codified as amended at* V.I. CODE ANN. tit. 16, § 91 et seq.

(10) Civil and criminal remedies are available to deter, prevent, and punish acts of domestic violence. V.I. CODE ANN. tit. 16, §§ 94, 96-99a (1996).

(11) Domestic violence occurs when someone commits an act specified by statute, or an attempt or threat to commit that acts, against a victim. V.I. CODE ANN. tit. 16, § 91(b) (1996 & Supp. 2011).

(12) Courts look to the definition of criminal offenses found within the Virgin Islands Code for guidance when interpreting acts of domestic violence. *Drew v. Drew*, 971 F. Supp. 948, 951, 37 V.I. 61 (D.V.I. App. Div. 1997).

(13) Assault and battery constitute acts of domestic violence. Act. No. 5646, § 4, 1990 V.I. Sess. L.p. 365, 369, *codified at* V.I. CODE ANN. tit. 16, § 91(b)(1)-(2).

(14) A victim of domestic violence is "any person who has been subjected to domestic violence by a spouse, former spouse, parent, child, or any other person related by blood or marriage, a present or former household member, a person with whom the victim has a child in common, or a person who is, or has been, in a sexual or otherwise intimate relationship with the victim." Act No. 5646, § 4, 1990 V.I. Sess. L.p. 365, 369, *codified at* V.I. CODE ANN. tit. 16, § 91(c) (1996).

(15) Previously, domestic violence victims were only "emancipated minors or persons 18 years of age or older of the opposite sex who have

resided together or who currently are residing in the same living quarters or persons who together are the parents of one or more children, regardless of their marital status or whether they have lived together at any time." Act No. 5013, § 9, 1984 V.I. Sess. L.p. 342, 347.

(16) "The legislative purpose of the Virgin Islands Domestic Violence Statute is to aid and protect victims of domestic violence by providing them with effective remedies." *Goodwin v. Goodwin*, 23 V.I. 80, 89 (Terr. Ct. 1987) (citing Act No. 5013, § 9, 1984 V.I. Sess. L.p. 342, 347-54).

(17) Domestic violence laws serve to develop greater understanding throughout the community of incidents and causes of domestic violence and serve to deter and punish domestic violence against family members and others personally involved with offenders through equal enforcement of the criminal law. Act No. 5646, § 3, 1990 V.I. Sess. L.p. 365, 368-69, *codified at* V.I. CODE ANN. tit. 16, § 90(a)(4)-(5).

(18) The Office of the Attorney General employs a "no-drop policy" for all criminal actions involving domestic violence. (App. to People's Br. 46 (transcript of *The Domestic Violence Prevention Act of 2010: Hearing on B. No. 28-0177 Before the Comm. on Pub. Safety, Homeland Sec., and Just.*, 28th Leg. (V.I. Apr. 21, 2010) (testimony of Wilson Campbell, Asst. Att'y Gen. of the Virgin Islands)).)

(19) If a police officer has probable cause to believe that suspect committed an offense involving domestic violence, the officer must arrest the suspect and is authorized to make the arrest without a warrant. V.I. CODE ANN. tit. 16, § 94(a) (1996).

(20) Domestic violence laws apply equally whether the individuals involved are of the same or opposite genders. (App. to People's Br. 17-18 (transcript of *The Domestic Violence Prevention Act of 2010: Hearing on B. No. 28-0177 Before the Comm. on Pub. Safety, Homeland Sec., and Just.*, 28th Leg. (V.I. Apr. 21, 2010) (testimony of Clema Lewis, Co-Director, Women's Coalition of St. Croix)).) *See also, e.g., Nibbs v. People*, 52 V.I. 276 (2009) (brother-brother); *Murrell v. Virgin Islands*, 51 V.I. 1095 (D.V.I. App. Div. 2009) (male-female); *Laudat v. Virgin Islands*, 48 V.I. 892 (D.V.I. App. Div. 2007) (son-mother).

## C. Virgin Islands Assault and Battery Statutes

(21) A person commits assault when he attempts to commit a battery or when he shows in a threatening gesture an immediate intention to commit a battery coupled with the ability to commit that battery. V.I. CODE ANN. tit. 14, § 291 (1996).

(22) Unlawful violence against another with intent to injure, regardless of the degree of violence or the means used, constitutes assault and battery. V.I. CODE ANN. tit. 14, § 292 (1996).

(23) "[I]n order that an assault may also become a battery, there must be a 'touching' or some physical force and contact within the concept of the common law definition of battery." *Government v. Hamilton*, 334 F. Supp. 1382, 1384, 8 V.I. 298 (D.V.I. 1971).

(24) Assault, or assault or battery, unattended by aggravating circumstances, constitutes simple assault and battery. V.I. CODE ANN. tit. 14, § 299 (1996).

(25) Simple assault and battery becomes aggravated when committed: (1) on an officer discharging an official duty; (2) in a court, place of religious worship, or place persons gather for innocent amusement; (3) in a private home; (4) on a person aged or decrepit; (5) by an adult male on a female or child or by adult female on a child; (6) by an instrument or means that inflicts disgrace; (7) while in disguise; (8) on a teacher or school employee on school grounds; or (9) on a caseworker, investigator, or other health and human services employee in the performance of an official duty. V.I. CODE ANN. tit. 14, § 298(1)-(7) (1996 & Supp. 2011); Act No. 7267, 29th Leg., Reg. Sess. § 6 (V.I. 2011) (to be codified at V.I. CODE ANN. tit. 14, § 298(8)-(9)), *available at* VI LEGIS 7267 (Westlaw).

(26) "All defenses that may be raised in criminal prosecutions generally are . . . available in a prosecution for an aggravated assault and battery." *Government v. Hodge*, 7 V.I. 73, 81 (D.V.I. 1968).

(27) Self-defense or defense of another does not constitute assault or assault and battery when reasonable force is used. V.I. CODE ANN. tit. 14, § 293(a)(6) (1996); *Government v. Stull*, 280 F. Supp. 460, 6 V.I. 347 (D.V.I. 1968).

(28) Aggravated assault and battery is a misdemeanor offense punishable by imprisonment of not more than one year, fine of not more

than five hundred dollars, or both. V.I. CODE ANN. tit. 14, §§ 2, 298 (1996 & Supp. 2011).

(29) In 2010, the Virgin Islands enacted "The Domestic Violence Prevention Act of 2010," which increased aggravated assault and battery as an act of domestic violence to a felony offense, punishable by imprisonment of not more than five years or fine of not more than one thousand dollars. The Domestic Violence Prevention Act of 2010, No. 7180, § 3(a)(2), 2010 V.I. Sess. L.p. 107, 109-10, *codified at* V.I. CODE ANN. tit. 14, § 298 (Supp. 2011).

### *Source of the Virgin Islands Assault and Battery Statutes*

(30) In 1921, the Territory of the Virgin Islands enacted separate Codes of Law for the Municipality of St. Thomas and St. John and for the Municipality of St. Croix. *See generally* St. Thomas & St. John Mun. Code (1921), *repealed by* V.I. CODE ANN. tit. 1, § 5 (1957); St. Croix Mun. Code (1921), *repealed by* V.I. CODE ANN. tit. 1, § 5 (1957) (hereinafter "1921 CODES").

(31) Assault and battery, including aggravated assault and battery, were among the crimes codified in the 1921 CODES. *See* ST. THOMAS/ST. JOHN MUN. CODE, tit. IV, ch. 5, § 32 (1921); St. Croix Mun. Code tit. IV, ch. 5, § 32 (1921).

(32) The 1921 CODES were borrowed in large part from the 1913 Laws of the Territory of Alaska. *Burch v. Burch*, 195 F.2d 799, 2 V.I. 559 (3d Cir. 1952); John D. Merwin, *The U.S. Virgin Islands Come of Age: A Saga of Progress in the Law*, 47 A.B.A. J. 778, 779 (1961).

(33) Because the Territory of Alaska did not criminalize assault and battery by adult males on females as aggravated assault and battery, the Virgin Islands could not have borrowed its statute from Alaska. *See* COMPILED L. OF TERR. OF ALASKA tit. XIV, ch. 2, § 1905 (1913).

(34) When the 1921 CODES were enacted, at least three jurisdictions codified assault and battery by an adult male on a female as aggravated assault and battery: the State of Texas, the Territory of Arizona, and the Territory of Puerto Rico. *See generally* TEX. PENAL CODE ANN. tit. 15, art. 1022(5) (1915 ed.); TERR. ARIZ. REV. STAT., Penal Code, part I tit. VIII, ch. IX, § 215(3) (1901 ed.); 1904 P.R. LAWS 50, § 6(5) (codified at P.R. LAWS tit. 33, § 821 (1937 ed.)).

(35) The aggravated assault and battery statute enacted by the Virgin Islands in the 1921 CODES is substantially similar to the aggravated assault and battery statutes of all three jurisdictions.

(36) The Territory of Arizona borrowed its criminal assault and battery statutes, including its aggravated assault and battery statute, from the State of Texas. *Compare, e.g.*, TEX. PENAL CODE ANN. tit. 15, art. 1022(1)-(10) (1915 ed.) *with* TERR. ARIZ. REV. STAT. Penal Code, part I. tit. VIII, ch. IX, § 215(1)-(6) (1901 ed.). *See State v. Romero*, 61 Ariz. 249, 148 P.2d 357 (1944).

(37) The Territory of Puerto Rico also borrowed its criminal assault and battery statutes, including its aggravated assault and battery statute, from the State of Texas. *Compare, e.g.*, TEX. PENAL CODE ANN. tit. 15, ch. 1-2, art. 1008-1023 (1915 ed.) (comprising seventeen sections) *with* 1904 P.R. LAWS 48-50, §§ 1-8 (codified at P.R. LAWS tit. 33. § 821-828 (1937 ed.)) (comprising eight sections). *Accord People v. Diaz*, 62 P.R.R. 477, 62 D.P.R. 499 (1943); *People v. Colón*, 25 P.R.R. 586, 25 D.P.R. 629 (1917); *Lange v. People*, 24 P.R.R. 796, 24 D.P.R. 854 (1917).

(38) Of the three jurisdictions, the assault and battery statutes, and in particular the aggravated assault and battery statute, in force in the Territory of Puerto Rico mirrored the statute enacted by Virgin Islands in 1921.

(39) The Virgin Islands borrowed its assault and battery statutes, including its aggravated assault and battery statute, from the Territory of Puerto Rico.

(40) In 1957, the Virgin Islands repealed the 1921 CODES and replaced them with a comprehensive code governing the entire Territory. *See generally* V.I. CODE ANN. tit. 1 (1996) (noting source in historical annotation).

(41) "All available laws, including the 1921 CODES . . . were classified according to subject matter, carefully edited, and arranged into 34 titles" when preparing the Virgin Islands Code. V.I. CODE ANN. at xi (reprinting first edition preface) (1995).

(42) The assault and battery statutes, including the aggravated assault and battery statute, were incorporated in Virgin Islands Code from the 1921 CODES without significant modification. *See generally* V.I.

CODE ANN. tit. 14, § 298 (1996) (noting the 1921 CODES as historical source).

(43) The current aggravated assault and battery statute derives from the version enacted in 1921 that was borrowed from the Territory of Puerto Rico.

### Judicial Interpretation of Borrowed Statutes

(44) ■ When one jurisdiction borrows a statute from another, the judicial interpretations of that statute by the highest court of the borrowed jurisdiction accompany that statute. *Berkeley v. W. Indies Enter., Inc.*, 480 F.2d 1088, 10 V.I. 619 (3d Cir. 1973); *People v. Colón*, 25 P.R.R. 586, 586 (1917).

(45) A male must be twenty-one years old or older to be prosecuted for aggravated assault and battery on a female as "an adult male." *Schenault v. State*, 10 Tex. Ct. App. 410 (1881); *People v. Colón*, 25 P.R.R. 586 (1917).

(46) An adult male commits an aggravated assault and battery against a female by using, or threatening to use, unlawful violence against her. Unlawful violence includes indecent assault. *George v. State*, 11 Tex. Ct. App. 95 (1881).